TEUNIS SLINGERLAND *vs.* TEUNIS S. SLINGERLAND.

September 10, 1888.

**Agreement to Convey Land—Statute of Frauds—Part-Performance.** —There were pending in the district court five different actions or proceedings in which this plaintiff and defendant were practically the parties opposed in interest; this plaintiff being plaintiff in four of them, two of them being against this defendant, and the other two being defended because of his interest, and this defendant being plaintiff in the fifth, which was defended because of this plaintiff making claim to the money claimed in it. They were all on the calendar of the court for trial at the March term, 1886; and on the 5th of March one of them, the most important of the five, was on trial, when this defendant proposed orally to this plaintiff that if he would dismiss the actions so brought by him, and consent that the money involved in the other should be paid to this defendant and the proceeding discontinued, he (this defendant,) would convey to him a certain farm, and the personal property belonging to it, on the day when he, this plaintiff, should be married to a young lady named. Plaintiff orally accepted the proposition, and, pursuant to it, dismissed the four actions, and consented that the money involved in the other should be paid; and it was thereupon paid to this defendant, and the proceeding discontinued. Plaintiff married the young lady named, but, when there-

| 39 | 197 |
|----|-----|
| 46 | 101 |
| 39 | 197 |
| 175 | 357 |
| 75 | 363 |
| 176 | 437 |
| 39 | 197 |
| 81 | 430 |

after he demanded the conveyance agreed on, the defendant refused to make it. The plaintiff could not be restored in respect to the actions and proceedings to the position he was in at the time of making the oral agreement, nor could any action for damages he might bring put him in as good a position. *Held,* that the performance by plaintiff was a sufficient part-performance to take the agreement out of the operation of the statute of frauds.

Plaintiff brought this action in the district court for Dodge county, to compel the defendant to convey to him a certain farm in that county in specific performance of the agreement stated in the opinion. The action was tried by *Buckham,* J., who ordered judgment for defendant. The plaintiff appeals from an order refusing a new trial.

*Geo. B. Edgerton, Burt W. Eaton, Gordon E. Cole,* and *Davis, Kellogg & Severance,* for appellant.

*Chas. C. Willson,* for respondent.

GILFILLAN, C. J. The parties stand in the relation of father and son. The defendant, the father, owned a large farm in the county of Dodge. On the 5th day of March, 1886, there were pending in the district court in said county five several actions or proceedings,— one an action by plaintiff against this defendant to recover about $15,000, for services rendered between June, 1879, and January, 1886; one an action by plaintiff against defendant to recover $850, the value of five shares of the capital stock of the First National Bank of Kasson, claimed by plaintiff to have belonged to him, and to have been wrongfully converted to his own use by defendant, January 29, 1886; one against said bank, of which this defendant was the president, to recover $850, the value of five shares of the stock of the bank claimed by plaintiff to have belonged to him, and to have been converted and disposed of by the bank January 29, 1886, which stock was also claimed by this defendant to belong to him; one against said bank to recover $190, money deposited by plaintiff in the bank prior to January 30, 1886, and which money this defendant claimed belonged to him; and one a proceeding by *mandamus,* on the relation of this defendant, against the county auditor of Dodge county, to compel him to issue to the relator his warrant upon the

county treasurer for the payment to the relator of certain moneys which had been paid into the treasury in redemption of lands sold for taxes, both this plaintiff and this defendant claiming to be entitled to such moneys. These actions and proceedings were all defended, the controversy in each being really between this plaintiff and defendant. They were all on the calendar of the March term, 1886, of the court for trial, and the first was on trial, when, on said 5th day of March, 1886, the defendant orally offered to plaintiff that if he would dismiss said actions brought by him, and turn over to defendant said money in the county treasury, he (defendant) would convey said farm to him, with the stock, machinery, and personal property, on the day when he should be married to a certain young lady, to whom he was then, and for some time had been, engaged to be married as soon as his pecuniary circumstances would warrant his assuming the support of a family, which engagement, and the reasons for delay in it, were known to and approved of by defendant. Plaintiff thereupon orally accepted said offer, and forthwith dismissed said actions, and withdrew his claim to the money involved in said *mandamus* proceeding, and such money was thereupon paid over to defendant, and the proceeding dismissed. On the 31st of March, 1886, plaintiff and said young lady were married. From March 5th till some time after the marriage defendant intended to carry out his agreement, but on December 8th following, on a formal demand by plaintiff for a conveyance, he refused to execute it, and denied any agreement or obligation to do so.

It is not found by the court below that plaintiff's marriage, or that any agreement by him to marry, formed any part of the consideration for defendant's agreement to convey. The marriage is therefore to be left out of account in considering the matter of part-performance. So is the matter of possession; for, although plaintiff worked on the farm under the direction of the defendant after the agreement, it is not found that such working was because of the agreement, and it is found that plaintiff never was at any time in the possession or control of the premises, or any part thereof, and never made any improvement thereon. The question, then, is, was the doing by the plaintiff of the things which we have mentioned,

to wit, dismissing the various suits and proceedings, and permitting the money in the county treasury to be paid to defendant, such part-performance as to take the agreement out of the operation of the statute of frauds?

The principle that must control the decision of the question is stated (in accordance with all the authorities) in *Brown* v. *Hoag*, 35 Minn. 373, (29 N. W. Rep. 135,) thus: "The doctrine of part-performance rests on the ground of fraud. The underlying principle is that where one of the contracting parties has been induced or allowed to alter his situation on the faith of an oral agreement within the statute, to such an extent that it would be a fraud on the part of the other party to set up its invalidity, equity will make the case an exception to the statute." That is, equity will not permit the statute, the purpose of which was to prevent fraud, to be used as a means of committing it. The difficulty is in applying the principle to the facts of the particular case, and in determining whether a fraud will result unless the agreement be enforced. Acts of part-performance may be done which will not take the case out of the statute. Thus, though the purchasers pay a part or the whole of the purchase-money, it will not suffice; because (although some authorities give a different reason for it) a recovery may be had of the money paid, and that is, in law, deemed an adequate remedy to prevent fraud. And so where the consideration is paid in services of such a character that their value may be estimated and liquidated in money, so as measurably to make the vendee whole. And it may be stated, generally, that where the party has another remedy that will restore him substantially and adequately to the situation he was in before, the statute will avoid the agreement. In case of payment in services, if their character be such that it is impossible to estimate their value by any pecuniary standard, and it is evident they were not intended to be measured by any such standard, the performance of them is a part-performance. Instances of that kind are furnished in *Rhodes* v. *Rhodes*, 3 Sandf. Ch. 305; *Davison* v. *Davison*, 13 N. J. Eq. 246; *Gupton* v. *Gupton*, 47 Mo. 37; *Sutton* v. *Hayden*, 62 Mo. 101; *Hiatt* v. *Williams*, 72 Mo. 214, in which the services agreed on were the care and support during life of one of the parties.

Another class of cases, more or less analogous to this, are those where something else was done besides payment of the consideration in money or services, and in which it was held that, because the party could not be substantially restored to his original situation, nor adequately compensated in damages, the agreement ought to be enforced to prevent fraud. In *Eldredge* v. *Jenkins*, 3 Story, 181, it was considered strong ground to enforce the agreement that the party had ₊surrendered up his present rights and just expectations under an agreement for a conveyance with a prior owner of the land, suffered his equity to enforce such agreement to expire, consented to the prior owner conveying to defendant, and had surrendered up all remuneration for his past advances and services upon the land under the agreement with such prior owner. In *Malins* v. *Brown*, 4 N. Y. 403, the plaintiff had agreed orally with the owner of real estate and Munroe, the defendant's testator, who held a mortgage upon it, that he should purchase it, paying part of the consideration to Munroe on his mortgage, and that Munroe should then execute a release. Plaintiff performed on his part, and the agreement to release was enforced, the court saying: "The recovery of the $700 [the amount plaintiff paid to Munroe] and interest would not indemnify the vendee. He has been drawn into a purchase which he would not have made independent of the agreement of Munroe. That will always be considered a part-performance which puts a party in a situation which is a fraud upon him unless the agreement is executed." In *Daniels* v. *Lewis*, 16 Wis. 140, plaintiff was preparing to bring an action against defendant to recover real estate. It was orally agreed between them that plaintiff should refrain from bringing the action, and pay defendant $75, and the latter should convey to him the real estate. Plaintiff did so refrain till his cause of action was barred by the statute of limitations, and paid part, and tendered the remainder, of the money. The agreement was enforced. In *Paine* v. *Wilcox*, Id. 202, W. was about to take an appeal and stay of sale upon a decree in foreclosure recovered by A. against him. He refrained from so doing, and allowed the sale to proceed, upon the oral agreement that it should go on, and A. bid in the property, and convey it to him on certain conditions. *Held*, a part-performance. In *Seaman* v. *Aschermann*, 51

Wis. 678, A. agreed orally with B. to accept from him and execute a lease of certain real estate and buildings for five years,—thereby inducing him to break off pending negotiations to rent to a third person, and to materially alter the structure of the buildings, to adapt them to A.'s use; and A. went into and held possession for two years, paying rent as agreed for the lease. Execution of the lease by A. was enforced. In *Van Dyne* v. *Vreeland*, 11 N. J. Eq. 370, an uncle agreed orally with a father to adopt and keep an infant son of the latter, and that at his (the uncle's) death all his property should belong to the son. The agreement was performed by the father and son, so far as they were to do so, and the agreement was enforced. In *Brown* v. *Hoag, supra,* a mother had executed a contract to convey the real estate in question, with other real estate, to one of her sons, C., and subsequently conveyed it with covenants to another son, F., and the latter had negotiated a sale of such other real estate, which was prevented by notice of the contract with the first son. To settle the matter, it was agreed orally, between the mother and two sons, that the mother should convey other real estate and certain personal property to the wife of C., and that C. should relinquish all claims to the property in question and that which F. was about to sell, and permit F. to convey. The mother conveyed to C.'s wife the real and personal property as agreed on, and F. conveyed that part which he had so negotiated to sell, and with the proceeds paid off mortgages on the whole property, and then conveyed that in question to Brown. The court held that if C., the defendant, were permitted to assert his claim under the contract of the mother to convey to him, her estate would be liable on her covenants in her deed to F., and an action at law for the value of the property transferred to C.'s wife would not afford adequate relief; and also that F., having conveyed with covenants, would be liable on his covenants, and would have no remedy except against the estate of the mother on her covenants; laying stress on the fact that the property transferred by the mother to C.'s wife was not transferred for a money consideration, and that it was evident its value was not intended to be measured by a money standard. So it was held to be a case of sufficient part-performance. It was stated, as the general principle for determining such cases: "It must appear

that his (the plaintiff's) position is such that an action at law for damages will not afford him adequate relief."

In this case no remedy is apparent that will restore plaintiff to the situation he was in, or put him in as good a situation as he was in, at the time of making the agreement. If the actions and proceedings then pending could be reinstated by vacating the dismissals, still plaintiff irretrievably lost the opportunity to try them at the March term, 1886. An opportunity to try them a year or two years after that time, when, perhaps, plaintiff's ability to present his claims would not be the same, would not be an equivalent for the right to try them at that term. But they could not all be reinstated. The proceeding against the county auditor certainly could not be, nor could a new similar proceeding be instituted. If the bank, relying on the settlement between plaintiff and defendant, and the dismissals of the actions against it, changed its position, so that restoring the actions would operate as a fraud upon it, those actions could not be reinstated; and, for the same reason, new actions for the same causes could not be maintained against it. As to the actions against defendant, plaintiff might succeed in having them reinstated, or, if he did not succeed, might bring new actions; but, in the latter event, a part of the cause of action in one of them would, in the mean time, have become barred by the statute of limitations.

The only other suggestion of a remedy to plaintiff is that he might have brought an action for damages for the loss sustained by his dismissal of the former actions and proceedings. Such an action would be novel, though it might be maintained. The difficulties in the way of prosecuting it, so that the recovery would put him in as good position as he was in before, would be great. He would have to show to what extent he had lost his original claims, and the value of what was so lost. Take the cases against the bank. He would have to show that his rights as against it were gone, and then show the value of his claims against it. And so with the other actions. The dismissals were not made on a money consideration, nor did the parties intend the value of the actions to be measured by a money standard. In no way could the loss of the advantage which the right to try the actions at the March term, 1886, gave him be estimated in

damages, nor any recovery be had for it.    Among all the cases we have cited, in no one was it clearer that an action for damages was not an adequate remedy than it is in this case.

Order reversed, and new trial ordered.

NOTE.  A motion for reargument of this case was denied October 10, 1888.