CAROLINE H. SVANBURG v. OSMAN FOSSEEN.

January 25, 1899.

Nos. 11,353—(220).

**Specific Performance of Oral Contract to Convey Entire Property at Death—Personal Services.**

Where, in a parol agreement for the purchase of real estate, the consideration consists of services to be rendered which are of such a peculiar character that it is impossible to estimate the value to the vendor by a pecuniary standard, and neither party intended so to measure them, the performance of the services will entitle the vendee to a specific performance, notwithstanding the contract was by parol; and this rule is especially applicable where, in addition to such services, the vendee, at the

request of the vendor, subsequently sold real estate at a sacrifice, and paid the proceeds to the vendor, as further consideration, and where, after the full performance of the services, it is out of the power of the court to restore the vendee to the situation in which he was before the contract was made, or to compensate him in damages.

## Same—Jurisdiction of Probate Court.

The probate court has no jurisdiction over actions for the specific performance of parol contracts for the conveyance of real estate.

## Same—Husband and Wife—Joint and Separate Property.

A contract on the part of husband and wife to convey by deed or will all their property, both real and personal, and a subsequent agreement on their part and that of each of them to make such conveyance, to take effect on their demise, would include all the property which they owned jointly or separately.

## Defect of Parties not Reached by Demurrer.

Where the demurrer is one as to want of jurisdiction and insufficiency of facts in the complaint to constitute a cause of action, it does not reach an objection that there is a defect of parties either of nonjoinder or misjoinder.

Appeal by defendant, as executor of the will of James Fosseen, deceased, from an order of the district court for Hennepin county, Harrison, J., overruling a demurrer to the complaint. Affirmed.

*O. Mosness* and *M. L. Fosseen,* for appellant.

Plaintiff is barred by the decision of the probate court upon the validity of the will. State v. McGlynn, 20 Cal. 234; Deslonde v. Darrington's Heirs, 29 Ala. 92, 95; Bogardus v. Clark, 4 Paige, 623; Woodruff v. Taylor, 20 Vt. 65; Ballow v. Hudson, 13 Grat. 672, 682; Tompkins v. Tompkins, 1 Story, 547, 557; Broderick's Will, 21 Wall. 503; 3 Redfield, Wills, 56. The alleged agreements are within the statute of frauds. Townsend v. Fenton, 30 Minn. 528; Austin v. Davis, 128 Ind. 472, 105 Ind. 522; Benders v. Bender, 37 Pa. St. 419; Gorham v. Dodge, 122 Ill. 528; Parker v. Heaton, 55 Ind. 1; Pond v. Sheean, 132 Ill. 312; Moore v. Small, 19 Pa. St. 461; Crabill v. Marsh, 38 Oh. St. 331; Mauck v. Melton, 64 Ind. 414; Ham v. Goodrich, 37 N. H. 185; Smith v. Smith, 28 N. J. L. 208; Shahan v. Swan, 48 Oh. St. 25. See Swash v. Sharpstein, 14 Wash. 426; Wallace v. Long, 105 Ind. 522; Temple v. Johnson, 71 Ill. 13; Ackermon v.

Fisher, 57 Pa. St. 457; Purcell v. Miner, 4 Wall. 513; Williams v. Morris, 95 U. S. 444; De Moss v. Robinson, 46 Mich. 62; Bresnahan v. Bresnahan, 71 Minn. 1; Maddison v. Alderson, L. R. 8 App. Cas. 467; Campbell v. McKerricher, 6 Ont. Rep. 85. The second agreement embraces at most only such property as was jointly owned by James and Mary Anna Fosseen, and which was possessed by the survivor at the time of his death. No such property is shown. The action cannot be maintained against the executor in his capacity as such alone. The legatees are necessary parties. If an action lies, plaintiff's sisters must be joined as plaintiffs. The action does not lie, for the reason that the probate court has exclusive jurisdiction of all ex contractu obligations of the testator. Hill v. Nichols, 47 Minn. 382. If plaintiff had a right to recover what she alleges she paid to the Fosseens, she cannot so recover in an action in which she demands specific performance. Horn v. Ludington, 32 Wis. 73.

*John M. Rees*, for respondent.

The probate of the will was not a bar. Testator could dispose of his property subject only to his debts. Mousseau v. Mousseau, 40 Minn. 236. The contracts are not void under the statute of frauds. The kind and character of the services rendered cannot be adequately paid for in money, nor was it ever intended that they should be so paid. Slingerland v. Slingerland, 39 Minn. 197; Brown v. Hoag, 35 Minn. 373. A contract to make a will is the subject of contract. Newton v. Newton, 46 Minn. 33; Pollock, Cont. 310. See Fry, Sp. Per. § 254; Maddox v. Rowe, 23 Ga. 431; Gill v. Newell, 13 Minn. 430 (462); Place v. Johnson, 20 Minn. 198 (219); Williams v. Stewart, 25 Minn. 516; Owens v. McNally, 113 Cal. 444; Townsend v. Vanderwerker, 160 U. S. 171; Patterson v. Patterson, 13 Johns. 379; Carmichael v. Carmichael, 72 Mich. 76; Linneman v. Morass, 98 Mich. 178; Kofka v. Rosicky, 41 Neb. 328; Nowack v. Berger, 133 Mo. 24; Wright v. Wright, 99 Mich. 170; Neal v. Gilmore, 79 Pa. St. 421; Frank's Appeal, 59 Pa. St. 190; Seddow v. Rosenbaum, 85 Va. 928; Swain v. Seamens, 9 Wall. 254; Walker v. Wilmington, 26 So. C. 80; McClure v. Otrich, 118 Ill. 320; Frame v. Frame, 32 W. Va. 463; Jaffee v. Jacobson, 1 C. C. A. 11, 21; Warren v. Warren, 105 Ill. 568.

BUCK, J.

Appeal by defendant from an order overruling a demurrer to plaintiff's complaint. The grounds of the demurrer are: First, that the court has not jurisdiction of the subject-matter of the causes of action therein stated; second, that the complaint does not state facts sufficient to constitute a cause of action.

The facts stated in the complaint and admitted by the demurrer are as follows: The plaintiff, whose maiden name was Caroline H. Hanson, when a year and a half old, with two sisters under six years of age, came, with their father, from Europe to America, to live with their uncle and aunt, James and Anna Mary Fosseen. James Fosseen died about December 3, 1894, and his wife died April 5, 1891. Plaintiff and her said sisters lived for several months with their said uncle and aunt after their arrival in this country, and thereafter they lived part of the time with the Fosseens, and part of the time with their father, until about January 23, 1876, when plaintiff's father died. At that time plaintiff was about eight years old, and her sisters were then of the respective ages of ten and thirteen years. Immediately after the death of their said father, the plaintiff and her said sisters, as aforesaid, and the said James and Anna Mary Fosseen, contracted orally by and between each other, in fact and in substance, as follows: That if the plaintiff and her said sisters would come to the house of the said James and Anna Mary Fosseen, as aforesaid, and live with them, and give them their services, as they should be directed, until they had grown up, in consideration thereof, at their death, said James Fosseen and his said wife would give and leave to the plaintiff and her said sisters, as aforesaid, all the property, both real and personal, which they then owned, and which they might own at the time of their death.

Relying upon said promises and agreements, and in pursuance of said contract, as aforesaid, the plaintiff lived at the house of said James Fosseen and his said wife, and gave them her services, as requested, daily and continuously, until she was 21 years of age, when she was married to Charles H. Svanburg, her present husband. The services so rendered by the plaintiff, as aforesaid, cannot be enumerated specifically, but they consisted of housework

75 M.—23

of every kind and character, all work in and about the house, of every nature, required in housekeeping and in running and maintaining a home, of sewing, washing, ironing, of care and nursing for said James Fosseen and his said wife, and much other and different kind of work done and performed outside of the dwelling house, in many and different ways, as requested by the said James Fosseen and his said wife. During said time, as aforesaid, a strong affection existed between said James Fosseen and his wife and the plaintiff and her said sisters, aforesaid, and the labor and services, as aforesaid, and the relationship herein described, were daily and continuous until the plaintiff was married, as herein alleged. The plaintiff never received any compensation or wages whatever for her said work and services, nor for any part thereof.

These sisters inherited real estate of value of $2,000; and about December 1, 1885, they made an additional contract with the said Fosseens, as follows: That if said plaintiff and her sisters would sell and convey their said real estate to one Swen Anderson, or to some other person whom said James and Anna Mary Fosseen would name, and give the money and proceeds thereof to said James Fosseen and his said wife, said James and Anna Mary Fosseen, and each of them, in consideration thereof, would, by deed or by will, convey or bequeath to said plaintiff and to her said sisters, as aforesaid, all the property which they then had or which they might thereafter acquire, both real and personal, in equal parts, such conveyance to take effect at the demise of the said James and Anna Mary Fosseen, and that said James and Anna Mary Fosseen, in consideration of the premises, would give and leave to the plaintiff and her said sisters, at their death, all the personal property which they should own at their demise. Said deed or will, as aforesaid, was to be left at the death of said James and Anna Mary Fosseen, or the title to all of said property, at their decease, was to be left in this plaintiff and her said sisters, as aforesaid.

Said plaintiff and her said sisters, relying upon said promises and agreements, as aforesaid, were thereby induced to, and did thereupon, sell, deed and convey their said real property, as aforesaid, to one Swen Anderson, at the request and solicitation of said James and Anna Mary Fosseen, at the price and for the sum of $1,300.

Nearly all of said sum of $1,300 was upon said December 1, 1885, or immediately thereafter, paid to said James and Anna Mary Fosseen, by and with the consent of the plaintiff and her said sisters. Thereafter the balance of said $1,300 was paid to and turned over by said Swen Anderson to said James and Anna Mary Fosseen, by and with the consent of the plaintiff and her said sisters, and the whole of said $1,300, as aforesaid, was, by and with the consent of the plaintiff and her said sisters, paid to said James Fosseen and Anna Mary Fosseen, and was by them used and appropriated to their own use. Neither of the Fosseens, by deed, conveyance, will or otherwise, in any manner, during their lifetime, made or executed any papers, nor did they, by gift or otherwise, give or leave the title to any of the property which they owned at the time the contract was made, or which they died seised of, as hereinafter alleged and set forth, to this plaintiff, or to her said sisters, or to either of them.

James Fosseen died seised of a large amount of real estate, a portion of which is specifically described in the complaint, situate within the jurisdiction of the court; and it is also alleged in the complaint that the defendant executor has disposed of a large portion of the estate, and now has the proceeds thereof in his hands. After the decease of James Fosseen, the defendant, Osman Fosseen, qualified as the executor of said will, and is engaged in settling the estate in accordance with the terms thereof, but has not distributed any portion thereof to the beneficiaries therein named. He gave a bond for only $5,000, whereas the said estate is of the value of about $25,000.

The relief asked in the complaint is that plaintiff be adjudged the owner of an undivided one-third of the real and personal property of which James Fosseen died seised; that said executor be enjoined from disposing of the same, as he is not financially responsible; that he be enjoined from paying to the beneficiaries in said will named any of said property, or conveying any thereof to said beneficiaries, but that one-third should be conveyed and turned over and paid to plaintiff. The demurrer was overruled, and defendant appeals.

It is proper to state that the other two nieces have each brought similar actions in equity in the district court, praying for the same relief, and a stipulation has been entered into between the parties whereby such actions shall abide the event of the decision in this case.

The two questions more distinctly brought before us for consideration are:

First. Are the contracts, or either of them, set forth in the complaint, within the statute of frauds?

Second. Was the probating of the will a final determination of all the interests of the plaintiff and her sisters in the property of the deceased?

The law is too well settled to need argument or citation of authorities that a person may make a valid obligation which is not within the statute of frauds, binding himself to make his will in a certain way, and thereby give certain property to a particular person or persons, and that such contract may be specifically enforced if such contract is not in itself unlawful. Under our statute of frauds (G. S. 1894, § 4215),

"Every contract for the leasing for a longer period than one year, or for the sale, of any lands or any interest in lands, shall be void unless the contract, or some note or memorandum thereof, expressing the consideration, is in writing, and subscribed by the party by whom the lease or sale is to be made, or by his lawful agent thereunto authorized, in writing."

But by section 4216, same statute, it is provided that

"Nothing in this chapter contained shall be construed to abridge the power of courts of equity to compel the specific performance of agreements, in cases of part-performance of such agreements."

The original statute of frauds was passed in the reign of Charles II.,[1] and a majority of the American states have enacted laws substantially, in legal effect, the same as the English statute. Section 4215 of our statute above quoted is an illustration.

"The controlling motive of the statute is one of expediency and convenience, and this motive has always been kept in view by the

[1] 29 Car. II. c. 3.

ablest courts in their work of interpretation. As its primary object is to prevent mistakes, frauds and perjuries, by substituting written for oral evidence in the most important classes of contracts, the courts of equity have established the principle, which they apply under various circumstances, that it shall not be used as an instrument for the accomplishment of fraudulent purposes; designed to prevent fraud, it shall not be permitted to work fraud. This principle lies at the basis of the doctrine concerning part performance, but is also enforced wherever it is necessary to secure equitable results." Pomeroy, Cont. § 71.

In the very nature of human legislative enactments, it is sometimes impossible to guard against every case of fraud, but equity, with its remedial powers, frequently steps in where law has failed or is powerless to accomplish the desired effect. And the legislature, recognizing the great wrongs that may sometimes be perpetrated in the name and under color of law, has enacted section 4216, above quoted, whereby equity may be invoked to stay the iniquities of those who rely upon the rigid rules of law; and it has thus made part performance a ground for the more perfect administration of justice. There are certain special features in the contract herein involved, appearing in the relation of the parties, in the terms of the subject-matter, and in the full performance on the part of the plaintiff, where damages would be inadequate if not impracticable. These special features and incidents of the contract and the relations of the parties are, in our opinion, sufficient to bring the case within the rules justifying an action for specific performance in behalf of plaintiff, whereby her interests can only be satisfied by an actual fulfilment of the stipulations which have been made for her benefit, and are justified by the authorities.

In the case of Slingerland v. Slingerland, 39 Minn. 197, 39 N. W. 146, in an action to compel specific performance for conveyance of land, the plaintiff was never in the possession of the land, and never made any improvements thereon. The defendant was the father of the plaintiff, and owned a large farm; and the son had brought several different actions or proceedings against the father, each being practically a party in interest, and the father had one suit as plaintiff against the son, and all of them being on the court calendar for trial, the father proposed orally to the son that if he would dismiss

the action brought by him, and consent that the money involved in the other action should be paid to the father, and the proceedings discontinued, he (the father) would convey to the son a certain farm, and the personal property belonging to it, on the day when the son should be married to a young lady named. The son accepted the proposition, dismissed four actions, and the money involved in the other action was paid to the father, and the proceedings discontinued. The son married the young lady, but the father refused to make the conveyance agreed upon. An action by the son for specific performance was sustained, the court holding that the son could not be restored in respect to the action and proceedings to the position he was in at the time of making the oral agreement, nor could any action for damages he might bring put him in as good position, and that the agreement was not within the statute of frauds. In that case it was further stated that in case of payment in services, if their character be such that it is impossible to estimate their value by any such standard, the performance of them is a part performance; citing, among other authorities, Rhodes v. Rhodes, 3 Sandf. Ch. 305. In that case it was held:

"In general, the payment of the consideration is not such a part performance of a parol agreement for the purchase of lands, as will relieve it from the operation of the statute of frauds. But where the consideration consists of services to be rendered, which are of such a peculiar character that it is impossible to estimate their value to the vendor by a pecuniary standard, and the vendor did not intend to measure them by such a standard, the performance of the services will entitle the vendee to a specific performance, notwithstanding the contract was by parol. This was held of an agreement made between. two brothers, who had always lived together and owned their property in common, by which the one having a family agreed to provide for and take care of the other, who had no family and who was subject to epileptic fits, during his life, in consideration that the former should have all the real and personal estate of the latter. Held, also, that the contract was so far certain and reasonable in its terms that it ought to be enforced in equity."

The doctrine of that case is cited with approval by Pomeroy in his work on Contracts (2d Ed.) page 161, where he says that the principle of this case is sound. He further says:

"But if the services are of such a peculiar character that it is im-

possible to estimate their value by any pecuniary standard, and it is evident that the parties did not intend to measure them by any such standard, then the plaintiff, after the performance of these services, could not be restored to the situation in which he was before, or be compensated by any recovery of legal damages. Under these circumstances, the rendition of the services, or the procuring them to be rendered, is a part performance of the verbal agreement, and the case is quite analogous to those in which outlays are made for improvements by a vendee or lessee under a parol contract. This principle is, at bottom, the same as that upon which the courts have proceeded, especially in a series of recent English decisions, in specifically enforcing certain agreements for continuous acts of labor and services, and construction of works where the legal remedy of damages for their breach is impracticable. It has also been applied under analogous circumstances, where the plaintiff has not, indeed, made any payment, but has done other acts in pursuance of the verbal agreement, but not directly affecting its subject-matter, which would leave him without adequate remedy unless the contract is enforced. * * * Payment of the price, although not of itself sufficient to admit the equitable remedy, is always regarded as a strong circumstance in connection with other acts, such as possession or the making improvements."

In Davison v. Davison, 13 N. J. Eq. 246, the services of Olson were held to be a good part performance of his father's verbal agreement to leave him a farm after the father's death.

Vanduyne v. Vreeland, first reported in 11 N. J. Eq. 370, and on a second hearing in 12 N. J. Eq. 142, was a case in which

"The father of an infant child made an agreement with an uncle of the infant, at the uncle's request, to this effect: that the uncle should take the infant, and adopt him as his own child, and that he would treat him as his own son, and that the property he should have should be given to the child, so that it should belong to him at the death of the uncle and his wife. The uncle took the child, and had him baptized, and the child assumed his surname, and lived with him twenty-five years. Held, that the child might maintain his bill upon the agreement after such performance."

Wright v. Wright, 99 Mich. 170, 58 N. W. 54, was a case in which

Defendant, in his second year, was indentured to deceased until his majority. When he was eight, deceased and his wife, being childless, adopted him, under the law then in force, and his name was changed. He gave them his entire services, without pay, till

he was over twenty-two, when deceased died. The widow testified that they intended that he should be their heir; that her husband believed that this was effected by the adoption; that defendant thought he was their child till after her husband's death; and that they never talked about paying him for his services. The adoption law was held unconstitutional. *Held*, that defendant's performance entitled him to the inheritance, by way of specific performance of the oral contract.

In Missouri, in the case of Sutton v. Hayden, 62 Mo. 101, a case in which one

Mrs. Green made an agreement by which she took, in its infancy, the child of her brother, upon the understanding that at her death all the property owned by her should go to the child, the child was to come and live with her, be as a daughter to her, and take care of her for the remainder of her life. The child entered upon the performance of her part of the agreement, and throughout the course of Mrs. Green's life rendered the services, and, so far as lay in her power, performed her part of the agreement. Mrs. Green died without having in any way secured the property to the child.

The court, at page 114, said:

"There are things which money cannot buy,—a thousand nameless and delicate services and attentions, incapable of being the subject of explicit contract, which money, with all its peculiar potency, is powerless to purchase. The law furnishes no standard whereby the value of such services can be estimated, and equity can only make an approximation in that direction, by decreeing the specific execution of the contract."

See also Sharkey v. McDermott, 91 Mo. 655, 4 S. W. 107, 647, where it was held:

An agreement by a man and his wife to adopt a child, provide and care well for her, and leave her their property at their death, performed on the part of the child, is enforceable as to the property on their death.

In Brinton v. Van Cott, 8 Utah, 480, 33 Pac. 218, it was held as follows:

A verbal contract, whereby plaintiff agrees to live with and take care of an old woman until her death, in consideration of her promise to leave all her property to plaintiff, is taken out of the statute of frauds by the rendition of the services during the lifetime of the

woman; and, after her death, equity will specifically enforce the contract, on the theory of part performance, since the services rendered are of a peculiar character, not intended by the parties to be measured by a pecuniary standard. A contract by which an old woman, in apparent good health, and having the expectancy of many years of life, agrees to leave all her property, worth about $5,000, to a 16 year old girl, in consideration of the latter's promise to live with and take care of her as long as she lives. is not void for want of mutuality and fairness; and after her death the contract will be specifically enforced in favor of the girl, who performed her part of the agreement, though the woman died within three or four months after the execution of the contract.

The court, at page 482, said:

"In this territory [Utah] the statute of frauds is in full force. 2 Comp. Laws, § 2831. It is therefore incumbent upon the appellant to show by her complaint that she has partly or wholly performed her contract, so as to take it out of the statute of frauds. 'When the consideration of the agreement consists in work, labor and services personally done and rendered by the plaintiff, if the value of the same can be ascertained with reasonable accuracy in an action at law, and adequately compensated by the recovery of damages, then neither the services themselves nor the payment for them will avail as a part performance of the verbal agreement. But if the services are of such a peculiar character that it is impossible to estimate their value by any pecuniary standard, and it is evident that the parties did not intend to measure them by any such standard, then the plaintiff, after the performance of these services, could not be restored to the situation in which he was before, or be compensated by any recovery of legal damages.' Under these circumstances, the rendition of the services is a part of the performance of a verbal agreement. The act of part performance of a verbal agreement for services must be such that it would be a fraud upon the party performing for the other party to refuse to perform his part as agreed between them. Pomeroy, Cont. 114."

See also Korminsky v. Korminsky, 2 Misc. 138, 21 N. Y. Supp. 611; Godine v. Kidd, 64 Hun, 585, 19 N. Y. Supp. 335; Jaffee v. Jacobson, 1 C. C. A. 11, 21, 48 Fed. 24, 4 U. S. App. 4; McKinnon v. McKinnon, 5 C. C. A. 530, 56 Fed. 409; Haines v. Haines, 6 Md. 435.

In the recent case of Kofka v. Rosicky, 41 Neb. 328, 59 N. W. 788, a girl about 17 months old was given by her parents to her uncle and aunt, under an agreement that they would adopt her, and rear, nurture and educate her, and that she was to be as their own child,

and at their death to receive all the property which they might own. She lived with them until they died, some 10 years, took their name, did not recognize or know her own father and mother in their true relation, but knew them as, and called them, uncle and aunt, and knew and recognized her uncle and aunt as father and mother. The uncle died intestate, possessed of real estate. It was held there was such a part performance of the contract by the parties thereto as entitled the child to a decree giving her the title to the property, by way of specific performance of the contract.

Now, the first contract brings this case within the doctrine above stated. The Fosseens were childless. They took these children as members of their own household. A strong affection grew up between the sisters and their foster parents. For many years they rendered faithful services to their uncle and aunt, doing household work of every kind, as well as outdoor work. They nursed and cared for these old people, and in no respect were they disobedient, negligent or unfaithful in their duties or attentions to their uncle and aunt. It is a fair inference that these childless old people regarded these nieces with a love and affection almost akin to that of parents for their own children, and, in return, the services and society of these children to them were of great benefit and pleasure. The value of such society and services to their uncle and aunt is incapable of measurement in money. Emery v. Darling, 50 Oh. St. 160–167, 33 N. E. 715; Rhodes v. Rhodes, 3 Sandf. Ch. 279.

The services were continuous for many years, until plaintiff was married, when she was 21 years old. The first contract would alone entitle the plaintiff to a specific performance. But the Fosseens encouraged and induced the plaintiff and her sisters to enter into the second contract, not that the Fosseens were, in substance, to do any more for the sisters than they had agreed to do under the first contract, but to procure from the sisters a further and valuable consideration to themselves. When their father died, in 1876, he left them real estate of the value of $2,000, which the Fosseens induced them to sell; and, to please and satisfy these foster parents, they sold the real estate for $1,300, or $700 less than its actual value, and paid the consideration to the Fosseens, upon their fur-

ther promise to do just what they had, years before, previously promised to do,—leave their property at their death to the sisters; and this payment of such money was a strong circumstance, creating an additional equity for the enforcement of this action.

Now, courts of equity will not allow the statute of frauds to be used as an instrument of fraud. Bork v. Martin, 132 N. Y. 280, 30 N. E. 584. And, where a person tacitly encourages an act to be done, he cannot afterwards exercise his legal right in opposition to such consent, if his conduct or active encouragement induced the other party to change his position, so that he will be pecuniarily prejudiced by the assertion of such adverse claim. Swain v. Seamens, 9 Wall. 254. One of the underlying principles upon which an action for specific performance may be enforced is that the plaintiff cannot be restored to the situation in which he was before the contract was made, and cannot be compensated by the recovery of legal damages. Slingerland v. Slingerland, 39 Minn. 197, 39 N. W. 146; Pomeroy, Cont. 162. The land sold by the sisters at a loss of $700 could not be restored to them, especially as the consideration received by them had passed into the hands of the Fosseens, and beyond the control of the sisters, and hence they could not be placed in statu quo.

While the complaint is not complete in its description of all the property of which James Fosseen died seised, nor of that sold, and the proceeds of which are held by the defendant as executor, nor of the amount and kind of personal property so held by the defendant, yet, as against the demurrer, there is enough real property the subject of the action, specifically described, to entitle the plaintiff to maintain this action. It is also to be noted that the contracts provided that the sisters should have the Fosseens' personal property on their decease; hence the contract was an entirety, and must be enforced as such. Mann v. Higgins, 83 Cal. 66, 23 Pac. 206.

Great stress is placed by the appellant upon the fact, as he alleges, that the plaintiff has had her day in court; that the will has been proven, and her claim has not been presented or allowed in the probate court; and that such court has fixed the status of the estate. It is a sufficient answer to this contention to say that this is not an action for the construction of a will, or for the distribution of any

property thereunder. The probate court has no jurisdiction over actions for the specific performance of parol contracts for the conveyance of real estate. G. S. 1894, c. 45a, tit. 10 (§§ 4623–4631), providing that the probate court may decree the conveyance of land, give that court jurisdiction only where the contract for conveyance is in writing; and it cannot decide controverted questions arising upon the merits even in such cases, but must leave the applicant or petitioner to his remedy by action. Mousseau v. Mousseau, 40 Minn. 236, 41 N. W. 977. Hence, if the probate court had no jurisdiction to hear this case, the plaintiff is not barred of her rights to enforce her contract in a court of general jurisdiction.

There is no merit in the contention of the defendant that the complaint does not show that the Fosseens had either jointly or separately any property whatever while they lived. Their promise was by the first contract to give and leave to plaintiff and her sisters all the property, both real and personal, which they owned and might own at the time of their death. Subsequently, by the terms of the second contract, said James Fosseen and Anna Mary Fosseen, and each of them, agreed to convey by deed, or bequeath, to said plaintiff and her sisters, said property, such conveyance to take effect upon their demise. This would include all the property which they owned jointly and separately.

The last point raised goes to the nonjoinder of parties plaintiff and defendant. But the demurrer is one as to want of jurisdiction, and insufficiency of facts stated to constitute a cause of action, and does not reach the objection that there is a defect of parties, either by nonjoinder or misjoinder.

Order affirmed.

START, C. J.

I concur in the result, and in all that is said in the opinion, except as to conveyance of plaintiff's real estate. I am inclined to the opinion that she could be compensated in damages for the real estate.

MITCHELL, J.

While in the main I concur in the foregoing opinion, I do not attach much, if any, importance to the fact that the plaintiff sold her own property for less than its value, and gave the proceeds to the

deceased. I think the case is taken out of the statute of frauds by the fact that the consideration which plaintiff has furnished consisted, not merely of services in the ordinary sense of the word, but also of the assumption of a peculiar personal and domestic relation to the deceased as a member of their family; and therefore the value of the consideration as a whole is incapable of being estimated by any mere pecuniary standard.

COLLINS, J.

I am of the opinion that plaintiff could be compensated in damages to the amount of her loss when selling her real estate, and, therefore, that the fact of such sale is of no consequence here.

CANTY, J.

I concur in a part of the result arrived at, but not in the foregoing opinion. I do not think that the statute of frauds should be brushed aside merely because the consideration for the land purchased on a verbal contract is personal services, whether it is difficult to estimate the value of such services or not. But I am of the opinion that the fact that the plaintiff was an infant, under the care and control of the vendor, and having no natural or legal guardian at the time, is a sufficient ground for taking the case out of the statute of frauds. Every one who assumes to act as guardian for, or manage the affairs of, an infant, is, at the election of the infant, estopped to deny that he has assumed the relation of guardian to the infant. 9 Am. & Eng. Enc. 121, and cases cited. Even where the adult has not the care or control of the infant, his dealings are scrutinized, and every presumption is against the adult, the same as if he bore to the infant the relation of guardian to ward. Johnson v. N. W. Mut. L. Ins. Co., 56 Minn. 365, 57 N. W. 934, and 59 N. W. 934; Alt v. Graff, 65 Minn. 191, 68 N. W. 9. But, when the adult has the sole care and control of the infant, equity should hold that such a fiduciary relation exists between them as to take the case out of the statute of frauds as to the real estate, but not as to the personal property.