## HERMAN TREBESCH v. CHRISTIAN TREBESCH and Another.[1]

July 16, 1915.

Nos. 19,302—(209).

**Gift of land.**

1. A father living on a farm, and owning another quarter section of land, told an unmarried son that if he would stay and work on the farm until he married and would agree to pay certain instalments of the unpaid purchase price of the quarter section, he would give him the quarter section of land upon his marriage. The son accordingly remained and worked on the farm until more than three years after his majority and made no charge for his services. After the son's marriage the father made him a parol gift of the land and delivered possession. In pursuance of the gift the son entered into possession, held such premises for 14 years, made permanent improvements of the value of $200, and allowed any claim for services to be barred by the statute of limitations.

**Transfer of land by verbal gift.**

2. To constitute a valid transfer of land by verbal gift, there must be a gift executed by delivery of possession, an acceptance of the gift, and performance of such acts in reliance thereon that it would work a substantial injustice to hold the gift void.

**Same — equitable bar to statute.**

3. The doctrine rests on the ground that under such circumstances it would be a virtual fraud to interpose the statute as a bar to plaintiff's remedial right.

**Part performance.**

4. Evidence that the donee, in reliance on the gift, rendered personal services of a character not intended to be measured by a money standard, and the value of which it is impossible to estimate in money, and that he allowed the statute of limitations to bar the assertion of any claim for such services, accepted the gift, occupied the land for 14 years, and made permanent improvements thereon, is sufficient to show part performance.

---

[1] Reported in 153 N. W. 754.

Note.—For cases passing upon the degree of proof necessary to establish parol gift of real estate, see note in 9 L.R.A.(N.S.) 508.

Estoppel.
>5. The taking of a written lease of premises by one in possession under a claim of title adverse or hostile to that of the lessor does not estop the lessee from setting up title in himself.

Action in the district court for Redwood county to determine the adverse claims of defendants to certain real estate. The case was tried before Olsen, J., who made findings and ordered judgment in favor of plaintiff. From the judgment entered pursuant to the order for judgment, defendants appealed. Affirmed.

*Somsen, Dempsey & Mueller,* for appellants.

*Moonan & Moonan* and *Albert H. Enerson,* for respondent.

HALLAM, J.

1. About 1885, Christian Trebesch and his wife purchased a quarter section of land in Redwood county. About two years later they bought a second quarter. Title to both was taken in the name of Mrs. Trebesch. For years they worked the half section as one farm, living upon it as the family homestead. In 1891, Christian Trebesch bought in his own name a third quarter section. The price was $10 an acre. Part of the price was paid down. The balance was distributed over 10 years, in annual payments of $125 each. There were five children. The oldest, Ferdinand, lived on the farm only at irregular intervals.' The next oldest, Charles, never lived on the farm at all. The next oldest, Tina, was married a few months after the family moved on the farm. Plaintiff, the next oldest, went on the farm a young boy and continued working there with his parents until he married, in January, 1898, at the age of over 24 years. The youngest, Fred, worked on the farm until the year 1899, at which time he married, at the age of 21, and rented the farm from his parents. During the years of their boyhood and young manhood plaintiff and Fred were the main reliance of the family on the farm. Plaintiff's services were greater than those of Fred. He continued in the service of the parents on the farm until past 24, whereas Fred quit at 21.

When plaintiff married, in January, 1898, he and his wife moved

130 M.—24.

upon the quarter section last purchased and occupied it as their home. This is the land here in controversy. Plaintiff claims title to it. He has no deed or other document of title. The evidence is ample, however, to prove the following state of facts: Some years before plaintiff's marriage the father told the son that he had bought this quarter section of land for him and that, if he would stay and work on the farm until he married, and would agree from the time of his marriage to make any remaining payments due upon the land and pay the taxes thereon, he, the father, would give the son the land. Pursuant to this understanding the son worked on the home farm during the years between the time of his majority and the time of his marriage and made no charge for his services; that after the son's marriage the father, in appropriate language, gave the land to the son and delivered possession to him, and the son entered into possession pursuant to said oral understanding or gift, and had sole and exclusive possession under claim of title for more than 14 years; that he paid the taxes on the land for each year while in possession up to the taxes for the year 1912 and to the amount of $400, made the last four payments on the land, which, with interest, amounted to $552, and made permanent improvements at a cost and of the value of more than $200. In these payments he was to some extent aided by his mother. He never paid rent for the premises and his parents never demanded any. On November 6, 1901, the last payment was made to the land company and a deed was made by the company to the father. Some time during the year 1901 the father received an injury that rendered him incompetent, and from this he has never recovered. The trial court held that plaintiff was the owner of the land.

2. The law on this subject is well settled by previous decisions of this court. The transaction can hardly be considered a sale. The alleged agreement made prior to plaintiff's marriage, and before possession was taken, was not enforceable. If the transaction is effective at all, it is as a gift of the father's interest in the land prompted by the rendition of services and the other considerations mentioned. To constitute a valid transfer of land by verbal gift, there must be a gift completely executed by delivery of possession, and performance

of some acts sufficient to take the case out of the statute of frauds. The performance necessary for this purpose must be an acceptance, a taking of possession under and in reliance upon the gift, and the doing of such acts in reliance thereon that it would work a substantial injustice to hold the gift void. Snow v. Snow, 98 Minn. 348, 108 N. W. 295; Hayes v. Hayes, 126 Minn. 389, 148 N. W. 125.

3. It was said in one case: "The whole doctrine (of part performance) rests upon the principle of fraud." Brown v. Hoag, 35 Minn. 373, 29 N. W. 135. In another case it was said there must be something to impute to the vendor "wrongful intent which alone furnishes an occasion for the interference of equity to enforce verbal agreements." Townsend v. Fenton, 32 Minn. 482, 21 N. W. 726. Other cases rest the doctrine on the ground of estoppel rather than fraud. Jorgenson v. Jorgenson, 81 Minn. 428, 84 N. W. 221; Snow v. Snow, 98 Minn. 348, 108 N. W. 295. But the difference is mostly one of names. The ground upon which the remedy rests is in reality that of "equitable fraud;" not an antecedent fraud consciously intended by the donor in making the gift, but a fraud inhering in the consequence of setting up the statute, for it would be a virtual fraud for the defendant, after permitting the acts of part performance to interpose the statute as a bar to the plaintiff's remedial right. 4 Pomeroy, Eq. Jur. § 1409; Horn v. Ludington, 32 Wis. 73. This does not differ much from the doctrine of estoppel, for although fraudulent intent is not an essential element of the conduct working an equitable estoppel (Dimond v. Manheim, 61 Minn. 178, 63 N. W. 495), yet in very case of equitable estoppel "it may with perfect propriety be said that it would be fraudulent for the party to repudiate his conduct, and to assert a right or claim in contravention thereof." 2 Pomeroy, Eq. Jur. § 805; Brown v. Hoag, 35 Minn. 373, 29 N. W. 135.

4. The term "part performance" is really a misnomer. The term is used "as a short and convenient statement of the general ground upon which verbal agreements regarding real estate are enforced." Veum v. Sheeran, 95 Minn. 315, 319, 104 N. W. 135. As to the acts necessary to constitute "part performance" it is held that the making of permanent improvements is sufficient. In one case the

plowing of 75 acres of land, work of the reasonable value of $3 an acre, was held sufficient. Gill v. Newell, 13 Minn. 430 (462).

The rendition of personal services of such a character that they were not intended to be measured by a money standard, and the value of which is impossible to estimate in money, has been held sufficient. This is especially true if the statute of limitations has barred the assertion of any claim for such services. Slingerland v. Slingerland, 39 Minn. 197, 39 N. W. 146; Svanburg v. Fosscen, 75 Minn. 350, 78 N. W. 4, 43 L.R.A. 427, 74 Am. St. 490. In this case there was a small amount of permanent improvement upon the land, but there was a much larger element of personal service, the service of a dutiful son upon a farm, a service not intended to be measured in money and never intended to be compensated in money. The statute of limitations long ago barred the assertion of any claim on account of these services. We think the acts of "part performance" sufficient.

5. We have not overlooked the fact that in September, 1912, the guardian made claim to title to the premises and demanded an accounting of plaintiff. Plaintiff from the outset of this negotiation claimed to own the land, but finally yielded to the demands of the guardian and rendered a rough accounting and entered into a written lease by which he leased the land of the guardian for the ensuing year. Under the rules of the common law this conduct in attorning to the guardian of his father's estate as a tenant, would have operated as an estoppel, precluding him from thereafter denying the title of his father or of asserting title in himself as against his father. Sage v. Halverson, 72 Minn. 294, 75 N. W. 229. This rule has been changed by statute in this state. G. S. 1913, § 6808, provides that the estoppel of a tenant "shall not apply to any lessee who, at and prior to the lease, is in possession of the premises under a claim of title adverse or hostile to that of the lessor." This is such a case. Under the statute the conduct of defendant in taking this lease did not estop him from asserting title in himself. Nevertheless such conduct is still strong evidence against plaintiff in the nature of an admission contradictory to the claim of title which he now asserts. The trial court plainly realized this fact but considered

that this evidence was, under the circumstances, not conclusive against him. Plaintiff was little accustomed to business. The defendant guardian was a business man of standing. In this negotiation he was accompanied and assisted by a banker whom plaintiff had known and respected for years. These men did not intend to impose on plaintiff. They were quite above any such thing. But they were imbued with the belief that without documentary evidence plaintiff could have no title, and they convinced plaintiff of this fact. All of them were mistaken upon this question of law. The conduct of plaintiff in taking a written lease of the premises was not conclusive against him, and the evidence sustains the decision of the court that plaintiff had acquired title to the land.

Judgment affirmed.