## SWANEY et v WILES et

Ohio Appeals, 4th Dist, Ross County
Decided May 29, 1930

J. D. Withgott, Chillicothe, for Swaney, et.
John P. Phillips, Jr., Chillicothe, for Wiles, et.

**MIDDLETON, PJ.**

It is contended by the plaintiffs that there was no contract which was sufficient under the statute of frauds to create any liability on the part of the deceased to give to her sister the property in dispute in this case. In support of this contention the plaintiffs rely chiefly on the case of **Cling, Admr. v. Bordner, 65 Oh St 86.** If this contention was well founded in other respects we would not regard that case as controlling for the reason that it was an action at law and the case before us is one in equity for specific performance. While the Bordner case may furnish some assistance in determining the rights of the parties it is not by any means conclusive.

The defendant relies on the letters quoted as affording a sufficient memorandum of a written contract to meet the requirements of the statute of frauds. If we felt compelled to rely solely on this construction of the letters we would hold that they are within the doctrine applied to memorandums which when signed by one person only are held to be sufficient. It must be remembered that a memorandum signed only by the party to be charged is specifically provided for by **8621 GC.** In respect to such provisions of statutroy law and the character of such memorandums it is said in **Ruling Case Law, Volume 25, page 674:**

"According to the weight of authority, a written offer signed by the party to be charged, if orally accepted by the person to whom it is made, may itself constitute a sufficient written memorandum of the contract, binding the person by whom the offer is made tho the other party may successfully plead the statute. In such case if the memorandum is otherwise sufficient, when it is assented to by him to whom the proposal has been made, the contract is consummated by the meeting of the minds of the two parties, and the evidence necessary to render it valid and capable of enforcement is supplied by the signature of the party sought to be charged to the offer to sell or buy."

The general rule is well stated in **Ann Cas. 1913A, page 1042:**

"Under a statute of frauds which provides that the memorandum required thereunder need be signed only by the party to be charged, it is generally held that an oral acceptance of a written offer is a sufficient memorandum to satisfy the statute if the person making the offer is the party to be charged and the written offer contains all the terms of the proposed contract."

We are not, however, without direct authority in this state on this question. In **Furnace Co. v. Railroad Co., 22 Oh St** it is said:

"A written proposal containing the names of the contracting parties and all the terms of the proposed agreement, signed by the proponent or some other p⌐rs⌐n thereunto by him lawfully authorized, when accepted and assented to by the party to whom the same is made, is sufficient to take an action against the proponent founded thereon out of the operation of the statute of frauds; and the delivery of such instrument as a proposal and the acceptance thereof and assent thereto by the party to whom it is made may be proven by parol testimony."

In the instant case not only is it established by oral testimony that the defendant accepted the proposal of her sister as contained in the letter under date of February 19, 1922, but that she fully performed the conditions specified therein as they should have been performed. This letter refers to a former proposal by the writer and reaffirms that proposal in this language: "I told·you that my property and things in the house would be yours when I was done with them if you come and stay, and there will be money left when I am done with it to pay you for your work taking care of me." We are persuaded that the expression quoted is sufficiently specific and definite to make plain the terms under which the defendant was to come and live with her sister.

An effort is made by the plaintiffs to raise some doubt in respect to what the term "property and things" was intended to include by the·deceased sister. It must be remembered that the writer was an aged woman and wholly ignorant of any technical terms by which various classes of property should be designated. In the light of the oral testimony it is apparent that what she intended was all of her possessions of every kind and description.

We conclude that if the determination of this case rested entirely on the interpretation that should be given to the letters in question we would hold that they comply sufficiently with the provisions of the statute of frauds. But this case does not depend upon whether there was a contract between these parties which met the requirements of the statute of frauds. It is shown by oral testimony and the letters in question that there was a contract, what that contract was and its full performance by the defendant Etta Wiles. Moreover, it was a contract for services, the value of which could not be measured in money or satisfied by a money judgment. The old lady was appealing to her only sister, not only for the latter's services but for her society and presence in·the former's home. In the case of 'Emery v. Darling, 50 Oh St, 160, 167, Judge Minshall settles this whole controversy with one sentence:

"The value of the society of one sister to another is incapable of measurement in money."

The observation of another court on this particular phase of this case is very perti-

nent and is found in the case of Svanburg v. Fosseen, 75 Minn. 350, 74 Am. St. Rep. 490, wherein the case of Emery v. Darling, supra, is referred to. It is said by the court in the Minnesota case:

"The Fosseens were childless. They took these children as members of their own household. A strong affection grew up between the sisters and their foster parents. For many years they rendered faithful services to their uncle and aunt, doing household work of every kind as well as outdoor work, *** The value of such society and services to their uncle and aunt is incapable of measurement in money."

It is our conclusion that the evidence in this case, including the letters, makes it one for a decree of specific performance. In reaching this conclusion we do not consider the testimony of the defendant Etta Wiles.

A decree may be entered in favor of the defendant Etta Wiles the same as was made in the Court of Common Pleas.

Mauck and Blosser, JJ, concur.