# Staunton.

FRANKIE L. CREED, ET AL. v R. S GOODSON.

September 19, 1929.

Absent, West, J.

The opinion states the case.

*H. P. Burnett,* for the appellants.

*S. B. Campbell* and *J. M. Parsons,* for the appellee.

CHICHESTER, J., delivered the opinion of the court.

Frankie L. Creed, *et al,* hereinafter referred to as appellants, are here complaining of a decree of the Circuit Court of Grayson county entered on the 6th day of June, 1928, in a chancery cause under the style of *R. S. Goodson* v. *Frankie L. Creed, et als,* the object of which suit was to set aside as null and void a certain deed dated March 6, 1925, executed by Train (T. R.) Goodson to the appellants and conveying to them a life estate in 136 acres of land and a remainder to their body heirs.

The court entered a decree, by which, pursuant to the prayer of the bill, it set aside the deed as null and void and decreed that eighty-five acres of the land conveyed by Train Goodson to Frankie L. Creed be conveyed to R. S. Goodson. The facts of the case are for the most part undisputed, and are as follows:

On October 9, 1876, Leander L. Goodson and wife, who were the owners of a tract of land containing about 200 acres, lying on the waters of Chestnut creek, Grayson county, Virginia, executed their deed thereto to their son, Train Goodson (T. R. Goodson), which deed was duly recorded in the clerk's office of Grayson county. The grantee took possession and resided on the land with his wife, Mary Goodson, until his death, March 12, 1925. His widow, Mary Goodson, who was, at the time of the institution of this suit and had been for several years, a person of unsound mind, survived him and lived at the "Old Homestead" with appellants until her death in 1927. Train (T. R.) Goodson left surviving him his widow, who has since died, and three children, Frankie L., one of the appellants, who married one M. R. Creed, the other appellant, Charlotte Lowe, who married William Lowe, and R. S. Goodson, a son.

On March 6, 1925, Train (T. R.) Goodson executed, signed, acknowledged and delivered to appellants for their natural lives and then to their body heirs a deed for 136 acres of the 200 acre tract which was conveyed to him by his father, Leander L. Goodson, and on the same day he conveyed thirty-six acres of the 200 acre tract to his other daughter, Charlotte Lowe. These two deeds were duly recorded in the clerk's office of Grayson county, on March 18, 1925. At the time these deeds were made appellants lived at the "Old

Homestead," with their father, who was in feeble health, and their mother.

At the first April rules, 1925, R. S. Goodson filed his bill against the appellants, asking that the deed made to them for the 136 acres be set aside as fraudulent, claiming that he was entitled to hold thirty or thirty-five acres of same by virtue of a parol promise made to him by his father, Train (T. R.) Goodson, about thirty years ago, and also that he was entitled to hold thirty or forty acres of the 136 acre tract by virtue of a writing dated January 25, 1899. This writing will hereafter be referred to as the "writing of 1899."

Pursuant to this parol agreement and in pursuance of the "writing of 1899," R. S. Goodson (or Roby Goodson, as he is known), the appellee in this case, entered upon these lands, lived on one of the tracts until the death of his father and made valuable improvements thereon

These two tracts of land claimed by R. S. Goodson are included in the 136 acre tract conveyed appellants for life and then to their body heirs by the deed of March 6, 1925, *supra*.

At the same rules R. S. Goodson also filed a bill, a copy, except as to the names, etc., of the bill filed against appellants, against Charlotte Lowe and her husband, Wm. Lowe. These causes were later consolidated.

The appellants filed their demurrer and answer to the bill filed against them. The cause was referred to H. A. Melton, a special commissioner. A great deal of evidence was taken, and the commissioner filed his report on March 10, 1927, by which he held that R. S. Goodson was entitled to the relief prayed for and that the deed to appellants and their body heirs for the

136 acre tract should be set aside and declared null, void and with no binding effect, and that a commissioner should be appointed to convey to R. S. Goodson the thirty or thirty-five acre tract claimed by him under the parol agreement of about thirty years ago, and the thirty or forty acre tract claimed by him under the "writing of 1899."

The written agreement is as follows:

"Grayson county, Va., January 25, 1899, to wit:

"We, the undersigned, agree that T. Goodson himself says that Roby Goodson is to have the Old Homestead as a gift this shall be R. Goodson's home. T. Goodson and Mary has their right and maintenance during their life time. The said Roby Goodson owns and comes where he does live and has all the buildings, his to move when he leaves or do as he likes with them. R. Goodson has rite sign of T. Goodson and wife to bild at a suitable place on the Homestead place.

"T. R. GOODSON     (Seal)

her

"MARY x GOODSON (Seal)

mark

"Teste: JONATHAN DAVIS,
     "T. M. BAKER."

This writing was recorded in the clerk's office of the Circuit Court of Grayson county on February 25, 1925.

The commissioner found that these agreements were entered into between the parties in consideration of the maintenance and support of the grantors by R. S. Goodson. He also found that R. S. Goodson substantially complied with the oral agreement and with the wirtten contract made with his father. A plat and

survey of these tracts were made at the time by A. H. Morris, a surveyor. This report of Commissioner Melton was duly excepted to by the appellants.

By the final decree of March 6, 1928, *supra*, the circuit court overruled the exceptions filed to the report of Commissioner Melton and confirmed it, appointed J. M. Parsons a special commissioner to convey to R. S. Goodson the tract of land mentioned in the "writing of 1899," which deed was duly executed and exhibited to the court and confirmed by decree. The deed so executed by Commissioner J. M. Parsons and confirmed by the court conveys to R. S. Goodson eighty-five acres of the 136 acre tract conveyed the appellants and their body heirs by Train (T. R.) Goodson. This eighty-five acres being the two tracts claimed by R. S. Goodson in his bills duly filed and later consolidated.

There are two assignments of error—

1. The failure of the court to sustain the demurrer to the bill, and

2. If there was no error in not sustaining the demurrer, the court erred in not sustaining the exceptions filed to the report of Commissioner Melton and in not dismissing the complainant's bill.

So far as the demurrer is concerned it is contended that R. S. Goodson could claim nothing under the "writing of 1899" because the writing on its face shows that it could be considered only at the most a promise to convey and being without consideration it is unenforceable. Further because it would be impossible to locate the tract referred to from the description given in the writing; that the writing was not a deed as it contains no words of grant as required by the Virginia statute; because there was no consideration in the conveyance and the attempt to affix the

seal does not supply the consideration not having been recognized in the body of the instrument.

The second ground of demurrer was directed to the claim made by R. S. Goodson that he is entitled to the tract upon which he resides by reason of a parol gift from his father and possession thereunder. This contention is based upon section 5141 of the Code of Virginia of 1919, which is as follows: "No estate of inheritance or freehold, or for a term of more than five years, in lands, shall be conveyed unless by deed or will, nor shall any voluntary partition of lands by coparceners having such an estate therein be made, except by deed; nor shall any right to a conveyance of any such estate or term in land accrue to the donee of the land or those claiming under him, under a gift or promise of gift of the same hereafter made and not in writing, although such gift or promise be followed by possession thereunder and improvement of the land by the donee or those claiming under him."

We do not think there is any error in refusing to sustain the demurrer to the bill. The "writing of 1899" is undoubtedly very crudely drawn, but the intention of the parties we think is quite clear and their subsequent conduct renders the writing sufficiently clear to entitle R. S. Goodson to a conveyance of the land referred to therein. All this is set out in the bill with sufficient clearness to make a case entitling the complainants to relief. As heretofore stated there was not only the writing but a survey of the tracts which the grantor intended his son, R. S. Goodson, should have. Train Goodson, father of these litigants, owned a considerable body of land in Grayson county, and with a view to giving each of his children a portion thereof he placed each child in possession of portions of this land. The others relinquished theirs but Roby

(R. S.) Goodson continued in the possession of the land given him and made valuable improvements thereon, changed his situation, expended work and labor on his possessions and brought himself into that class of person who, except for section 5141 of the Code, above referred to, would take title to real estate by virtue of the parol gift.

Prior to the Code of 1887 there was a long line of cases holding that if a parent made a parol gift of land which was followed by possession, expenditure on the land and improvement to the land, that this was a valid sale and might be set up by oral testimony alone. The law was changed so as to require a writing and the Code now provides: "Nor shall any right to a conveyance of any such estate or terms in land accrue to the donee of the land or those claiming under him under a gift or promise of gift of the same hereafter made and not in writing."

It is admitted that, unless there is written evidence in the present case showing that Roby Goodson was the owner of the land in question, under the law, the gift is void.

The reason for this change in the law was set out in an address by Judge Burks before the Virginia State Bar Association, quoted in *Nicholas* v. *Nicholas*, 100 Va. page 664, 42 S. E. 669, 670, as follows: "Even a parol gift of land, if possession was taken by the donee and a large expenditure was made by him in improving the land, was treated in equity as a valid sale and was allowed to be established by oral testimony alone. This was a most prolific source of fraud. Voluntary partition also of land by coparceners was considered as not within the operation of the statute requiring a deed to convey an estate of inheritance or freehold, and therefore partition by parol was upheld.

"In both of these instances the law was changed by the revision so as to require writing."

■ It is thus seen that it was the intention of the revisors of the Code to require some evidence other than parol evidence of the gift. They did not require that the evidence must be under seal, but only that it be in writing. In the instant case the appellee has his evidence in writing. All this appears in the bill and with the other facts stated makes a case, which, if true, entitle the complainant to relief.

The circumstances attending the drawing of the "writing of 1899" were both unique and significant. On January 25, 1899, T. R. Goodson, father of the parties to this suit, called in two of his neighbors, Jonathan Davis and T. M. Baker, and told them that he wanted to make a deed to Roby Goodson for certain real estate. He then took these witnesses and pointed out to them the exact boundaries of the land which he expected Roby Goodson to have. After doing this they returned to the house and there one of the witnesses drew up the paper which T. R. Goodson and his wife signed, sealed, acknowledged and delivered, and which paper was afterwards proven before the clerk of the Circuit Court of Grayson county and admitted to record.

■■ There is sharp contention between the parties as to whether the "writing of 1899" is under seal or not, but as this seems immaterial to us we shall not follow the parties in their discussion of this question. As stated by the appellants in their brief if this paper is required to be under seal it is presumed to be under seal. If not required to be sealed then the seal is unnecessary if it is immaterial. As we have said the paper is crudely drawn, but it is very much in the language of the old instrument known as a covenant

to stand seised. See 2 Minor's Real Property (1st ed.) section 1233, where it is said: "The consideration is the foundation of this conveyance and if that exist the words 'covenant to stand seised' are not essential but may be substituted by any words demonstrative of the intent, such as grant, bargain, sell, assign, enfeoff, etc.; nor is it needful, supposing that there is the near kindred, etc., expressly to declare the consideration."

The same authority says that it is necessary that this conveyance be made between close blood kin. Friendship, long acquaintance or even love for an illegitimate child are not sufficient to raise a use of this nature.

■ Here we have the relationship, father and son. We have the agreement that T. Goodson is to hold the land granted for the benefit of R. Goodson, who at the death of T. Goodson is to come into actual possession. This conveyance by the force of our statute is transferred into a fee simple estate, and put on the same footing as a deed of bargain and sale. The statute of uses is a companion statute to that of grants and of future grants. See 2nd Minor Real Property, sections 1229 and 1230.

■ As to the parol agreement this is clearly recognized in the "writing of 1899" by T. R. Goodson as belonging to Roby Goodson, this writing says: "The said Roby Goodson owns and comes (to) where he does live and has all of the buildings, his to move when he leaves there, or do as he likes with them."

The two assignments of error involve one and the same question and have been discussed together. We agree with the trial court that both the demurrer and the exceptions to the commissioner's report should have been overruled.

■■ Two points are raised in this court that were not raised in the court below. One was that the "writing of 1899" was not competent evidence and the other was that it was never properly recorded. Rule 22 preculdes consideration of these questions in this case. We will not consider them further. There is a final ground of error assigned in that the appellants had only a life estate in the property granted to them in the deed of March 6, 1925, the remainder to their body heirs, and that these body heirs were not made parties to the suit. This question was not raised in the lower court, but neither the decree of that court nor this court can affect the alleged rights of the body heirs of the appellants and as we are of the opinion to affirm the decree of this court it will be done without prejudice to these parties to assert their rights, if any they have, in any proper proceeding.

*Affirmed.*