# Richmond

JAMES F. CANNON, ET ALS. V. OSWALD A. CANNON.

March 24, 1932.

Present, Campbell, C. J., and Holt, Epes, Gregory and Chinn, JJ.

The opinion states the case.

*E. E. Johnson* and *Burnett Miller,* for the appellants.

*Weaver & Armstrong,* for the appellee.

GREGORY, J., delivered the opinion of the court.

The appellee, Oswald A. Cannon, instituted this suit in equity against the appellants, who are his brothers, sisters, nieces and nephews, seeking to enforce a certain parol agreement whereby he claimed that he was entitled to a conveyance of approximately seventy-five acres of land which belonged to his mother, Sarah E. Cannon, at the time of her death. His claim is that his mother agreed to give him the land at her death if he would furnish her with a home and support her during the remainder of her life. He claims to have fully performed his obligations under the agreement, but upon the death of his mother in 1927, he discovered that she had not performed her obligations under the agreement by devising the property to him but that she had devised it to the appellants and himself to be divided equally between them. The lower court was of the opinion that the appellee was entitled to have the agreement specifi-

cally enforced and so decreed. That decree is now before us for review.

The evidence was taken, by consent of all parties, in open court.

The property which is the subject of this litigation was the old home place of Sarah E. Cannon and she had expressed a desire to remain there the rest of her life. She had ten children, two of them having died leaving children. The land was poor and hilly. There were very few tillable acres. The land was probably worth $20.00 per acre and had a rental value of about $100.00 per year. Oswald Cannon, the appellee, was the youngest child. He was born and raised on this property and has lived there all of his life. All of the other children had left.

Prior to the time of the agreement claimed in this case the appellee was living on the tract as a tenant, renting it from his mother, paying her therefor one-third of the crops. In 1911, he decided to make a change. He engaged himself to a Mr. Wood as a farm hand but before he began his new work his mother persuaded him to remain on her property.

When we consider the evidence introduced regarding the contract we find no substantial conflict therein. It consists, in the main, in the testimony of the appellee and the declarations and conduct of his mother as shown by the testimony of other witnesses. He testified that in 1911, after he had decided to make a change, his mother promised him that if he would remain on her farm and look after and take care of her the remainder of her life and render to her such personal service as she might need and conduct such farming as might be necessary on the place, such as cultivating the land and dealing in live stock and generally taking charge of the place, she would give him the farm at her death. He further testified that he agreed to assume these responsibilities and that he performed them upon the faith of his mother's promise; that he actually supported and cared

for her, providing her with shelter, food and other necessities from that time until her death in 1927, in all sixteen years; and that he conducted the farm during all of that time as he had agreed to do.

A short time after this agreement was made, Mrs. Cannon, the mother, in the performance of her part of the contract, went to one Dudley, a friend and neighbor and requested that he prepare a will for her. He testified (and his testimony is not contradicted) that Mrs. Cannon told him that she wanted to give the farm to the appellee because she was living with him. Dudley prepared the will in accordance with her wishes, devising the farm to the appellee, and she executed it in the presence of two witnesses and left it with Dudley for safe-keeping. In 1925, without saying anything to the appellee, she made another will, expressly revoking the former will, in which latter will she devised the farm to the appellants and the appellee, to be divided between them equally, but she made the appellee a specific bequest of $500.00 in money, thus to that extent preferring him over the other children. After her death in 1927, the last will was probated and the estate settled by the personal representative. The $500.00 was paid to the appellee as well as his distributive share of the other personal property. He accepted the $500.00 and placed it in bank. In the meantime the appellants interested themselves in making sale of the property and for that purpose they joined in an instrument empowering E. E. Johnson to make the sale at auction. They approached the appellee and requested him to sign the instrument and he at first indicated that he would sign it but later, after consulting his attorney, refused. A short time thereafter he filed his bill of complaint seeking the specific performance of the contract which he claimed to have had with his mother.

The appellants filed their answer and denied that the appellee had such a contract as claimed by him with

Sarah E. Cannon, the mother, but if such a contract was made, it was never performed by the appellee. They charged that their mother was forced to leave the home place on account of ill treatment and abuse she received from the appellee. They also charged that the appellee was left $500.00 by the mother, which was accepted by him in full satisfaction of all that she owed him.

At this point we will state that we fail to find any evidence that the appellee ill-treated or abused his mother or that he drove her from the home place.

The appellants contend that this is not a case in which specific performance should be decreed, but, if it is, the evidence is not sufficient to prove the contract. Again they contend that there is no corroboration of the testimony of the appellee regarding the contract, as is required under such circumstances by section 6209 of the Code.

They also make the point that the appellee by accepting the $500.00 bequest and his distributive share under the will is now estopped to take a position against the will and claim the land under a parol agreement.

The principles under which parol contracts for the sale of land, such as the one now under consideration, may be enforced, have been expressed and stated many times by this court in its opinions. Such contracts are taken out of the operation of the statute of frauds and enforced in chancery because the remedy at law is not adequate and it would amount to a fraud on the party, who in reliance on the contract has performed it, to permit the other party to refuse performance on his part. Courts of equity will not allow the statute of frauds to be used as an instrument of fraud.

Acts of part performance in order to take a case out of the operation of the statute of frauds must be referable solely to the contract which is to be enforced. They must be in consequence of the contract and such as would

not have been done but for the contract. Where, as is the case here, the parol agreement is founded on a consideration consisting of services rendered which are of a character that it is impossible to estimate the value by a pecuniary standard, and it was never intended that they should be so measured, the performance of the services will entitle the party who has performed them to a conveyance of the land. So in Virginia by our decisions it will be found that these contracts are enforceable in equity where (1) the parol agreement relied upon is certain and definite in its terms; and (2) the acts relied upon to prove part performance refer to, result from or are made in pursuance of the agreement proved; and (3) where the agreement has been so far executed that a refusal of full execution would operate a fraud upon the party and place him in a situation which does not lie in compensation. Where these things concur a court of equity will decree specific execution. *Plunkett* v. *Bryant,* 101 Va. 814, 45 S. E. 742; *Wright* v. *Pucket,* 22 Gratt. (63 Va.) 370; *Frizzell* v. *Frizzell,* 149 Va. 822, 141 S. E. 868, 870.

In *Frizzell* v. *Frizzell, supra,* Chinn, J., speaking for the court and recognizing the right to specific execution of such a contract, says:

"From reference to the facts in *Halsey* v. *Peters* [79 Va. 60] and *Wohlford* v. *Wohlford* [121 Va. 699, 93 S. E. 629], it is clearly evident that the doctrine of the latter case was intended to apply only to those cases in which the gift or promise of a gift is unsupported by a consideration, and not to those where there is such a consideration for the gift or promise as will allow the same to be treated in equity as a valid contract for the sale or devise of land.

"Since, therefore, a consideration is alleged for the promise sought to be enforced in the instant case, and there is some evidence tending to support that allegation, we do not think the contract now under consideration comes

within the inhibition of the above mentioned statute, as did the contract in *Wohlford* v. *Wohlford*, but it belongs to that class of cases to which the rules of law pertaining to the specific performance of contracts for the sale of land are applicable."

The contract, however, in that case was not enforced because the evidence failed to bring it within the control of the essential equitable principles.

In *Reed* v. *Reed*, 108 Va. 790, 62 S. E. 792, 794, it was said:

"In addition to the authorities already cited of *Wright* v. *Pucket* and *Plunkett* v. *Bryant*, we refer to *Svanburg* v. *Fosseen*, 75 Minn. 350, 78 N. W. 4, 74 Am. St. Rep. 490, 43 L. R. A. 427, 'where, in a parol agreement for the purchase of real estate, the consideration consists of services to be rendered which are of such a peculiar character that it is impossible to estimate the value to the vendor by a pecuniary standard, and neither party intended so to measure them, the performance of the services will entitle the vendee to a specific performance, notwithstanding the contract was by parol.' "

And in concluding, quoting with approval from the case of *Svanburg* v. *Fosseen, supra:*

"I think the case is taken out of the statute of frauds by the fact that the consideration which plaintiff has furnished consisted not merely of services in the ordinary sense of the word, but also of the assumption of a peculiar personal and domestic relation to the deceased as a member of their family; and therefore the value of the consideration as a whole is incapable of being estimated by any mere pecuniary standard."

In *Steinman, etc.* v. *Fleming*, 145 Va. 731, 134 S. E. 696, 698, the equitable principle was again recognized and the parol agreement enforced. This was said:

"A careful examination of the evidence convinces us

that the parol gift of the 169 acre tract was certain and definite in its terms; that the acts in part performance were made in pursuance of the gift; and that a refusal to sustain the gift would operate a fraud upon the appellee and place her in a situation in which she could not be adequately compensated. This meets the requirements of the principles of equity applicable to such cases. *Wright* v. *Pucket*, 22 Gratt. (63 Va.) 370; *McLin* v. *Richmond*, 114 Va. 244, 76 S. E. 301."

When we apply these principles to the facts and circumstances of the present case it clearly appears that the appellee is entitled to the specific performance of the contract. The contract is proven clearly and definitely by his testimony. It is nowhere controverted or denied in the evidence. According to the evidence the acts done by him in part performance of the contract consisted of sixteen years of personal service to his mother, furnishing her during all of that time with a home and board. He worked the farm, planted a small commercial orchard on the land, paid the taxes and insurance, built and repaired some of the buildings on the place and built a fence around the tract. These acts necessarily referred to and were done in pursuance of the contract. So far as the appellee is concerned the contract has been completely performed on his part, and manifestly if it is not enforced a fraud will be perpetrated upon him and he will be unable to obtain compensation for his sixteen years of service.

All of the other children had left the home prior to the time the contract was made in 1911 and were living in other sections of the country. While they were interested in their mother and showed her some attention, they had their own families to look after. We do not find that any of them were willing to go to the old home place, where she desired to spend the rest of her days, and take care of her. They are here now resisting the enforcement of the

contract, but they stood by for some sixteen years without offering any substantial help or aid to their brother, the appellee, who has, for all that time, borne the entire burden of supporting and caring for the mother. The appellee was under no more obligation, in the absence of the contract, to support and take care of his mother than the other children were. He, alone, was the only one of the children who was willing to make the sacrifice and comply with the mother's desire, that she might be permitted to spend her last days at the old home. She, therefore, selected the appellee for the purpose, knowing that she could depend upon him to take care of her there where she was satisfied to remain.

It is said that the testimony of the appellee regarding his agreement with his mother and the performance of it by him, was not corroborated, as is required in such cases under section 6209 of the Code. It was only necessary that his testimony in this respect be substantially corroborated. It was not necessary that it be corroborated in every particular and detail. The fact that the contract was made is certainly corroborated by the testimony of Dudley who wrote the first will in which the property was devised to the appellee and in which he stated that the mother said she was devising it to the appellee because she was living with him. No further corroboration of the existence of the contract was necessary. The testimony of the appellee regarding his performance of the contract is corroborated by the undisputed fact that he took his mother in the home and supported and cared for her for sixteen years as a member of his family. Other corroboration is found in the testimony of other witnesses and the appellants themselves where it is clearly shown that she lived with and was supported by the appellee from 1911 until she died in 1927.

Section 6209 of the Code does not require the testimony of an adverse witness to be corroborated in every

particular. The statute only requires that there should be such corroboration as would confirm and strengthen the testimony of such adverse witness. *Burton's Ex'r v. Manson*, 142 Va. 500, 129 S. E. 356.

It is contended that even though the appellee has proven his contract and its performance on his part, nevertheless he is not entitled to enforce it because he is estopped by his conduct to do so.

This contention is based on the fact that the appellee accepted the $500.00 bequest and his distributive share under the will. The decree of the court provided that the appellee "shall not have the benefit of this decree until he shall have paid to said Jas. Cannon, administrator, with the will annexed * * * the said sum of $500.00 with interest." Thus it is seen that he is not entitled to the specific performance of the contract until he repays the $500.00 to the administrator. If, and when, this is done the estate will be restored to its former status and the respective interests of the appellants will in no way be prejudiced.

There can be no equitable estoppel by conduct unless the party who invokes it has been misled by such conduct to his injury or has been induced to change his position to his prejudice.

In this case the appellee testified that after he learned that his mother had changed her will and had failed to devise the property to him in accordance with the contract he thought that he was bound to accept under the will and that he could not enforce the contract. He testified that he was ignorant of his rights in the premises. He consulted an attorney who advised him that he could not enforce the contract because he had accepted the bequest of $500.00. Finally he consulted other attorneys and was advised that he could maintain a suit to establish his rights to the property, and then he offered to return the $500.00 to the administrator but he refused to accept it. Under

such circumstances we are of opinion that he is not estopped to prosecute his suit for the performance of the contract. The appellants who are resisting the enforcement of the contract have not been misled by his conduct. They have in no way been prejudiced in their rights or interests and have suffered no injury in consequence of any conduct on the part of the appellee.

A great deal has been said about the allegations in the bill respecting the contract; that it has not been sufficiently alleged, and that the proof of it does not correspond to the allegations. In the bill it is alleged that the mother promised, that at her death, she would make a will and devise the property to the appellee while he testified that she promised "to give" him the property. It is contended that this amounts to a variance and is fatal to the appellee's case. We do not think there is any merit in this point because the gist of the agreement was services to be performed by the appellee for his mother's life and when the obligation was performed he was entitled to the land regardless of whether he acquired it by will or deed. Our conclusion is that the contract was sufficiently alleged in the bill and that there was no material variance between the bill and the proof.

We are of opinion that there is no error in the decree of the trial court. It is affirmed.

*Affirmed.*