# Richmond

DOLLIE A. ADAMS V. WILLIAM SNODGRASS, ET AL.

February 26, 1940.

Record No. 2165.

Present, All the Justices.

The opinion states the case.

*L. P. Summers* and *Andrew R. Summers,* for the appellant.

*H. E. Widener* and *R. E. Boucher*, for the appellees.

HOLT, J., delivered the opinion of the court.

Specific performance of a contract to make a will is sought in this suit.

R. L. Snodgrass, hereafter designated as decedent, died in July, 1938, in his seventy-first year.  He was a bachelor and lived on a farm in Washington county of 160 acres, equipped as ordinary farms ordinarily are.

Complainant, Dollie A. Adams, is thirty-three years old, unmarried, and the mother of four children. Decedent was the father of three. He had known her for about twelve years. During a part of that time she lived with him, or on his farm, but for about three years preceding August, 1937, she lived on a little place of her own about three or four miles away, containing 5½ acres.

In August, 1937, decedent was taken ill and after midnight sent a hired man, Irvin Neely, for complainant. He went for her, and, in response to this summons, she came at once. This night she chanced to be spending with her sister, Rebecca Widener, who was living on the Snodgrass farm.

The next morning decedent told complainant that if she would stay with him, look after him and do for him, he would make a will leaving her what he had. To that proposition she assented. He was a frail man and his health was bad. She looked after the place and attended to his stock. His bed was infested with bedbugs, which she cleared away; she cooked for him and washed for him; she gave him medicine; he suffered with rheumatism, and she repeatedly rubbed him with alcohol; at times she sat up with him all night; she washed him and kept him clean, something which was not always an attractive undertaking. For this she was paid no wages. At his suggestion, she brought over her children, together with a little furniture, and closed her home. These conditions obtained until his death in August, 1938. She further said that she would not have done what she did except for the promise.

None of his relatives lived in Virginia, but in Tennessee, Texas and Indiana. They did nothing for him and, according to her evidence, seldom visited him.

In August, 1938, he became desperately ill. She notified the Tennessee relatives, who then came and took him to a hospital in Bristol; he was then unconscious and died the next day.

Two witnesses, Irvin Neely, who was neither a kinsman nor a connection, and Rebecca Widener, a sister, were

present when the contract was made and have testified to its terms. He sent for Drucy Whiteaker, a nearby farmer, to come and bring him some potatoes, and in a conversation then had he told him that he was going to will everything which he had to her. She, on her part, did all that she had undertaken to do.

Thereafter, she filed her bill, asking that the contract be enforced. In it she sets out substantially the facts already stated. The respondents interposed a demurrer, which was overruled. They then answered. Thereupon evidence, wholly in the form of depositions, was taken and submitted. They denied that there was any such contract and said that their relations with decedent were cordial; that they frequently visited him and as often as could have been expected, taking into consideration the fact that they lived in other States. They further said that they, or some of them, were at the home immediately after the funeral and that complainant then made no such claim as she is now setting up but asserted title to a small patch of tobacco and to an interest in some other tobacco growing on the place, to two patches of corn and to some young chickens.

There are 500 pages of depositions, which it would be unfruitful to discuss in detail. These facts present a typical case for an issue out of chancery. This was the opinion of the trial judge, who ordered this issue to be submitted to a jury:

"But the court is of the further opinion that the complainant is entitled to a reasonable compensation for such services as she may have rendered R. L. Snodgrass following her entry into his home, in August, 1937, and, therefore, if complainant so desires, this cause is referred to a jury on an issue out of chancery to determine whether or not complainant has received reasonable compensation—as on a *quantum meruit*—for the services rendered by her to R. L. Snodgrass from August, 1937, until the date of his death, and if the jury believe she has not received reasonable compensation for such services, to determine, find and fix the amount in money that, in addition to what she has

received, would be reasonable compensation for such services."

The court in its opinion further said: "In my judgment it is not necessary to decide whether the complainant and her corroborating witnesses told the truth or not." That really was the principal issue in this case.

The respondents contend that the claims made by the complainant immediately after the decedent's funeral demonstrate that there was no such contract and that issue should have been submitted to a jury; that is to say, there was no error in ordering an issue out of chancery but there was error in refusing to submit to it complainant's claim at all.

In *Hook* v. *Hook,* 126 Va. 249, 101 S. E. 223, the draftsman of this opinion when on circuit was reversed because he did not order an issue out of chancery, though none had been requested, and in it *Catron* v. *Norton Hardware Co.,* 123 Va. 380, 96 S. E. 853, is referred to as containing a lucid and valuable discussion of those principles which should control the direction of an issue. There the court said:

"While directing an issue to be tried by a jury is a matter of discretion with a court of equity, it is not an arbitrary discretion, but one to be exercised upon sound principles of reason and justice. A mistake in its exercise is just ground of appeal, and the appellate court will determine whether or not it has been properly exercised in a given case. It is error to direct an issue when it should not have been exercised, and it is equally error to fail to direct one when it should have been directed."

The contract must be reasonable. *Shield* v. *Adkins & Company,* 117 Va. 616, 85 S. E. 492.

In *First National Exchange Bank* v. *Roanoke Oil Co.,* 169 Va. 99, 192 S. E. 764, the court said:

"It is settled by a long course of decisions as a principle of equitable jurisprudence, that specific performance of a contract is not a matter of absolute or arbitrary right, but is addressed to the reasonable and sound judicial discretion

of the court. There are general rules and principles, which govern its application, but relief is granted, or refused, according to the circumstances of each particular case. Therefore, no positive rule fitting all cases, can be laid down. In general, it will be used to promote an exact measure of justice, as nearly as is possible, and will be refused when it will produce injustice. It is never granted unless it is entirely in accordance with equity and good conscience. When the contract sought to be enforced has been proven by competent and satisfactory evidence, and there is nothing to indicate that its enforcement would be inequitable to a defendant, but will work injury and damage to the other party if it should be refused, in the absence of fraud, misapprehension, or mistake, relief will be granted by specific enforcement. *Millman* v. *Swan,* 141 Va. 312, 127 S. E. 166; 8 Michie Digest, Va. and W. Va. 1003; 58 C. J. 855."

■ There was nothing unreasonable about this contract and promise. Complainant had lived with him and had borne him three children, and it was to her, and not to any of his kinspeople to whom he turned, in his distress. It is perfectly true that he was under no legal obligations to them, but there were moral obligations which he himself recognized, for he had in some measure continued to contribute to their support. On the other hand, respondents, even by their own testimony, had done nothing and had contributed nothing to his comfort, although if they kept in touch with him as they say they did, they must have known of his approaching end, for they left with complainant a request that they be notified of its approach. Moreover, this was a contract of hazard; he might have died the day after it was made, but he might have lived long. In the latter contingency it would have been wiped away had the plaintiff, after years of service, grown discouraged and failed to do her part. In such a contingency a trained nurse would have more than absorbed his estate.

■ The leading case in Virginia on specific performance is *Wright* v. *Pucket,* 22 Gratt. (63 Va.) 370, in which these things were held to be necessary: (1) The parol agreement

must be certain and definite; (2) acts proven in part performance must refer to, result from or be made in pursuance of the agreement, and (3) it must have been so far executed that refusal of full execution would operate as a fraud upon the party and place her in a position which does not lie in compensation. This case and these principles we have approved time and again.

In the development of this rule it has been held that where services are personal and when their value can be easily computed, courts of equity may and do decree pecuniary compensation rather than specific performance. *Frizzell* v. *Frizzell,* 149 Va. 815, 141 S. E. 868; *Porter* v. *Shaffer,* 147 Va. 921, 133 S. E. 614. This is not questioned, but the situation may be changed by the character of the service and by the conditions which then obtain. Pecuniary compensation is not always adequate. Mr. Justice Gregory in *Cannon* v. *Cannon,* 158 Va. 12, 163 S. E. 405, quotes with approval from *Svanburg* v. *Fosseen,* 75 Minn. 350, 78 N. W. 4, 74 Am. St. Rep. 490, 43 L. R. A. 427, this fair statement of the law:

" * * * where, in a parol agreement for the purchase of real estate, the consideration consists of services to be rendered which are of such a peculiar character that it is impossible to estimate the value to the vendor by a pecuniary standard, and neither party intended so to measure them, the performance of the services will entitle the vendee to a specific performance, notwithstanding the contract was by parol.

It was approved by Chief Justice Campbell in *Couch* v. *Cox,* 165 Va. 55, 181 S. E. 433.

A contract in judgment must not be inequitable and in determining this we look to the circumstances of the particular case.

"When the contract sought to be enforced has been proven by competent and satisfactory evidence, and there is nothing to indicate that its enforcement would be inequitable to a defendant, but will work injury and damage to the other party if it should be refused, in the absence of fraud, mis-

apprehension, or mistake, relief will be granted by specific enforcement. *Millman* v. *Swan,* 141 Va. 312, 127 S. E. 166; 8 Michie Digest, Va. and W. Va. 1003; 58 C. J. 855." *First National Exchange Bank* v. *Roanoke Oil Co.,* 169 Va. 99, 192 S. E. 764.

This case is quite like that of *Timberlake's Adm'r* v. *Pugh,* 158 Va. 397, 163 S. E. 402.

Timberlake was an old bachelor. He told Mrs. Pugh that if she would come to live with him with her four children, cook for him, wash for him, wait on him, etc., he would give them a home. She moved in and later moved out, whereupon as a further inducement he said that if she would return and serve him as she had done, he would will her his house and lot. The court told the jury that if they believed the contract had been established they should find for her in the fair value of his property. They did find for her, and that finding we affirmed.

The services performed by Dollie A. Adams have been stated, and it is not necessary to burden the record with a detailed restatement of them. They are in substance these:

Their relations are set out. She closed her home and came to live with him, and if we are to believe her evidence, and as to this there is no real dispute, her services were tender, intimate and at times exceedingly distasteful. There is no yardstick by which their pecuniary worth can be measured. The contract, if made, she has observed and it does not appear that he considered himself under special obligations to any one else, for he died intestate. If made, it must be enforced; if not made, she should be paid for her services on a *quantum meruit* basis. A jury should be empaneled and it should be told:

First, if you believe from the evidence that R. L. Snodgrass said to Dollie A. Adams in substance this, "If you'll come here and wait on me and care for me until I'm done with it, it will be yours; it belongs to you if you'll come here and do for me, * * * I can't depend on anybody else, when I'm done with it here it will be fixed for you," and

that this offer was accepted, it shall find for the complainant and no more.

Second, if you believe from the evidence that the contract has not been established, then you shall find for the complainant in such a sum as will fairly compensate her for services rendered.

We have seen that the court thought that an issue out of chancery should be ordered. Plainly it should have covered the major controverted matter in dispute and not have been limited to one subsidiary which may not be reached at all.

For reasons stated, this cause is reversed and remanded to be tried in accordance with those principles herein set out.

*Reversed and remanded.*