# 𝔚𝔦𝔠𝔥𝔪𝔬𝔫𝔡

## Flarra M. Wright v. Viola Carper Dudley and Bessie Bishop Allen.

April 25, 1949.

Record No. 3483.

Present, All the Justices.

The opinion states the case.

*John B. Spiers*, for the appellant.

*Ted Dalton* and *Robert A. Fulwiler, Jr.*, for the appellees.

GREGORY, J., delivered the opinion of the court.

Mrs. Flarra M. Wright filed a bill in equity against Mrs. Viola Carper Dudley and Mrs. Bessie Bishop Allen, the

purpose of which was to require the enforcement of a parol contract whereby it was alleged that Mrs. Dudley agreed to devise her home place, consisting of 85 acres, to Mrs. Wright in consideration of the maintenance and support of Mrs. Dudley by Mrs. Wright. The court denied the relief requested in the prayer of the bill and held that Mrs. Wright could be compensated in damages, and that the value of her services did not exceed what she had received from the use of the farm.

In November, 1936, Mrs. Dudley, who was then of advanced age, being more than 80 years old, lived alone on her farm which was located some four miles from the city of Radford. She had been living alone for many years with only a man tenant on her place. As she grew older she concluded that she should have a woman to live with her in her home, and following out her desire, she approached Mrs. Flarra M. Wright, who was a niece by marriage, and offered that if Mrs. Wright would, for the rest of Mrs. Dudley's life, go and live with her, take over the home and conduct it, take care of her, board and clothe her, pay the necessary doctor bills and other medical attention, and pay the taxes on the property, keep it up and farm it, Mrs. Dudley would devise the 85-acre tract of land to her. Mrs. Wright did not at first accept the proposal, so on December 25, 1936, Mrs. Dudley, being anxious to effect the arrangement, again approached Mrs. Wright and requested that she accept her proposition. Mrs. Wright then accepted, and in December, 1936, or January, 1937, Mrs. Dudley executed her will in which she devised the 85 acres to Mrs. Wright, as she had offered to do. On March 19, 1937, Mrs. Wright gave up her home in Radford and she and her husband moved to the home of Mrs. Dudley in the country and took entire charge of it. She immediately began complying with her obligations under the contract by providing lodging, board, medical expense, and other personal services to Mrs. Dudley, and operating the farm. The first few years the arrangement, which continued for more than 8 years, seemed to be satisfactory. One witness said the rela-

tion between Mrs. Wright and Mrs. Dudley was like that of daughter and mother. However, during the latter part of the period Mrs. Dudley became dissatisfied, and on April 3, 1945, without any knowledge on the part of Mrs. Wright, Mrs. Dudley secretly executed a deed conveying the 85-acre tract of land, as well as other real estate, to her niece, Mrs. Bessie Bishop Allen. This conveyance was based on no consideration whatever and was made without any knowledge on the part of Mrs. Allen. After the execution of this deed and its recordation, Mrs. Dudley withheld knowledge of the fact from Mrs. Wright but continued to reside in the home and was provided for by Mrs. Wright until February, 1946, at which time she voluntarily withdrew from the home and went to West Virginia to live with Mrs. Bessie Bishop Allen.

That substantial improvements were made upon the land by the Wrights cannot be denied. A statement of these was filed showing such expenditures, aggregating $1,839.99. Fire insurance premiums for eight years, amounting to $110.64, were paid, and substantial quantities of lime were bought and spread upon the land. They paid the taxes for five years.

As soon as Mrs. Wright discovered that Mrs. Dudley had violated the agreement by executing the deed conveying the land to Mrs. Allen, she instituted the present suit, the purpose of which has already been stated. The bill was filed in December, 1945, and its prayer was that the deed from Mrs. Dudley to Mrs. Allen be set aside as voluntary and fraudulent; that a trust in favor of Mrs. Wright be impressed upon the said 85 acres; that specific performance of the parol contract between Mrs. Dudley and Mrs. Wright be enforced; that an injunction be awarded against Mrs. Dudley, enjoining her from disposing of the said 85-acre tract, and for other general and special relief.

The respondents filed their joint and separate answers. They denied that any contract between Mrs. Dudley and Mrs. Wright had ever been entered into, and sought, as affirmative relief, against Mrs. Wright, to remove her and

her husband from the property and enjoin them from further interfering with or trespassing on the property.

Considerable evidence was taken by way of depositions, and the cause was submitted to the chancellor for decision. By decree of May 10, 1948, the chancellor found and established as facts the following: " * * * that the complainant has established by a clear preponderance of credible evidence that Viola Carper Dudley, one of the respondents, made a valid contract with the complainant, Flarra M. Wright, to make a will; that such contract was based upon consideration deemed valuable in law; that a will was executed by Viola Carper Dudley, one of the respondents, pursuant to such agreement; that in reliance upon the contract to make a will and the actual execution of the will by Viola Carper Dudley, Flarra M. Wright entered into the possession of the premises involved, and performed the terms of the agreement, resting upon and binding her, from March, 1937, to the time that Viola Carper Dudley voluntarily left the said premises and home in Montgomery County, in February, 1946; that the said Flarra M. Wright, the complainant, has always been ready and willing, since said February, 1946, to comply with the terms of her agreement with Viola Carper Dudley; but has not been permitted so to do, without fault on her part; that Viola Carper Dudley, in violation of her agreement, and in derogation of the complainant's rights, has executed and delivered and recorded a deed in fee simple, conveying the 85 acres of land involved in this suit, to Bessie Bishop Allen; that no consideration passed or was involved in said transfer and was, therefore, voluntary and fraudulent and in violation of the complainant's rights."

The court, however, refused to grant the prayer of the bill, and further decreed that Mrs. Wright was entitled only to compensation by way of damages from Mrs. Dudley, and that such compensation as she was entitled to was satisfied in full by what Mrs. Wright had received from the farm under the contract. The court, by the decree, allowed Mrs. Wright to remain in possession of the property during the year, 1948, to reap the crops.

No attempt was made to assess Mrs. Wright's damages, if she were only entitled to damages. No attempt was made to ascertain the amount she had received from the farm, if it were to constitute an offset to the damages. No rule for the measurement of these elements was provided by the court and no reason given for equalizing one against the other. It is quite improbable that one would square against the other. However this may be, we do not think that the claim of Mrs. Wright could have been compensated in damages.

There are many assignments of error, but we do not think it necessary to take them up *seriatim.* As we have seen, the court, in effect, converted this suit in equity into an action at law for damages, taking the broad view that a court of equity having taken jurisdiction of the cause would proceed to accomplish justice between the parties even though it involved an award of damages and a consideration of the satisfaction of those damages by the proceeds realized by the complainant from the lands of the defendant, Mrs. Dudley.

The facts established by the court in the first part of the decree, as above outlined, were supported by a great preponderance of the evidence. Mrs. Dudley, who was 91 years of age when she testified, said that she made a contract with Mrs. Wright and that she executed the will making Mrs. Wright the beneficiary of the 85-acre tract. She said that she suggested the arrangement that if they would come out and live on her place she would "give them all the proceeds of the income on the place to use as they pleased". However, at first she denied that she ever agreed to devise the tract to Mrs. Wright, but finally admitted that she executed the will in which the devise was made but stated that she had later destroyed it. While quite naturally, she seems to have been confused in her testimony, she admitted that Mrs. Wright was to have the 85 acres. She was asked this question, "When you made the first will (that is the will in question) you provided that she should get it (that is the 85-acre tract)?", and her answer was, "Yes, sir." She then stated that she had changed her mind, and made an-

other will, a copy of which is in the record, and of which Mrs. Wright had no knowledge. In that will she devised all of her property to Mrs. Allen. It was made on the 14th day of January, 1943, six years after Mrs. Wright had gone to the farm and begun looking after Mrs. Dudley. As already stated, she still later made the deed to Mrs. Allen conveying the 85-acre tract to her. On the whole, the evidence abundantly supports the contract as testified to by Mrs. Wright.

This court had recognized parol contracts of this nature and enforced them in equity: (1) Where the contract relied upon is certain and definite in its terms; (2) where the acts relied upon to prove performance or part performance refer to, result from or are made in pursuance of the contract proved; and (3) where the contract has been so far executed that a refusal of full execution would operate a fraud upon the party and place him in a situation which does not lie in compensation. The concurrence of these three elements entitles the complainant to a decree for specific execution of the contract. See *Cannon* v. *Cannon,* 158 Va. 12, 163 S. E. 405, and the cases there cited. Also see the later cases of *Adams* v. *Snodgrass,* 175 Va. 1, 7 S. E. (2d) 147; *Couch* v. *Cox,* 165 Va. 55, 181 S. E. 433, and *Clark* v. *Atkins,* 188 Va. 668, 51 S. E. (2d) 222, and cases there cited. Contracts of this kind are taken out of the operation of the statute of frauds and enforced in equity because the remedy at law is not adequate and it would amount to a fraud on the party who, in reliance on the contract, has performed it, to permit the other party to refuse performance on his part or render it impossible of performance.

The contract, of itself, clearly demonstrates that the parties never contemplated any other form of compensation to Mrs. Wright than the transfer to her of the 85 acres at the death of Mrs. Dudley. Mr. and Mrs. Wright, under the verbal agreement, were induced to leave their home in the city of Radford and go into the country and live on a farm. This was a substantial change in their lives. It

meant that Mrs. Wright would have to perform peculiar personal and domestic services, and that Mrs. Dudley, who had grown old, would have to be taken into their home as a member of the family and attended and waited upon.

It is common knowledge that elderly people often become dissatisfied, irritable, complaining and child-like, and it is difficult to please them. Mrs. Dudley was well acquainted with Mrs. Wright before the agreement was made. For many years, at a prior period, she had lived and worked in Mrs. Dudley's home.

Code, section 5141, invoked by the appellees has no application here. The same statute was invoked in *Clark* v. *Atkins*, 188 Va. 668, at pages 676-677, 51 S. E. (2d) 222, and there it was written: "The appellants invoke Code, sec. 5141 (Michie). This statute provides, among other things, that 'No estate of inheritance * * * in lands shall be conveyed unless by deed or will * * * nor shall any right to a conveyance of any such estate or term in land accrue to the donee of the land * * * under a gift or promise of gift of the same hereafter made and not in writing although such gift or promise be followed by possession thereunder and improvement of the land by the donee * * *.'

"We do not think that the section quoted has any application to the case at bar. Prior to the adoption of section 2413 of the Code of 1887, now section 5141 of Michie's Code of 1942, an oral promise to give or devise land, followed by possession and improvement, was sufficient to support a right to a conveyance from the heirs or devisees of the donor, but since the adoption of this section such a promise must be in writing in order to be enforced. See *Mann* v. *Mann*, 159 Va. 240, 165 S. E. 522, and *Creed* v. *Goodson*, 153 Va. 98, 149 S. E. 509. In the case at bar there was not a parol gift of land. Atkins relied upon and proved an oral contract for the purchase of the meat business and what pertained to it in exchange for his services in conducting and operating said business for the lifetime

of Clark. This consideration on his part has been fully performed."

In the case at bar there was no parol gift of land but there was established an oral contract to devise land for a consideration fully performed. The statute relied upon does not embrace within its provisions such a case and therefore it does not apply.

Appellants rely upon the defense of lack of mutuality as a bar to Mrs. Wright's claim for specific performance. It is well settled that as a general rule lack of mutuality is a good defense and especially is this true in relation to contracts for personal services which have not been performed by a promisee. However, when the promisee has rendered the services he agreed to render, or has been prevented from fully complying with the agreement through no fault of his, but solely as the result of the fault of the promisor, as was the case here, a different rule applies. *Asberry* v. *Mitchell*, 121 Va. 276, at page 281, 93 S. E. 638, L. R. A. 1918A, 785.

When we apply the legal principles which we have often stated to the facts in the present case, the appellant is clearly entitled to the specific performance of the contract. Of course, technically, it is quite true that an agreement to dispose of property by will cannot be specifically enforced in the lifetime of the promisor because testamentary papers, from their nature, are revocable. After death it cannot be enforced because it is no longer possible for the promisor to make a will. However, courts of equity can do what is equivalent to specific performance of such agreements by compelling those on whom the legal title has descended to convey or deliver the property in accordance with its terms, "upon the grounds that it is charged with a trust in the hands of the heir at law, devisee, personal representative or purchaser, with notice of the agreement, as the case may be." See *Burdine* v. *Burdine*, 98 Va. 515, 36 S. E. 992, 81 Am. St. Rep. 741.

During the oral argument in this case, it was suggested in writing by counsel for appellant, and made a part of

the record, that Mrs. Dudley had died during the pendency of this appeal. That fact, of course, nullified the argument of counsel for appellees to the effect that as long as Mrs. Dudley was alive specific performance could not be decreed against her. Her death also refutes the argument that the case did not fall under the control of *Cannon* v. *Cannon, supra,* and other like cases cited. Under Code, section 6167 (Michie, 1942), so far as this appeal is concerned, provision is made for such a changed situation.

The chancellor, as we have stated, properly decided in the quoted portion of the decree that no consideration passed from Mrs. Allen for the transfer to her of the 85-acre tract, and to that extent it was voluntary and fraudulent and in violation of the complainant's rights. Not only did Mrs. Allen not provide any consideration for the deed, but she did not even know about its execution and recordation until a considerable time thereafter.

We are of opinion that the deed from Mrs. Dudley to Mrs. Allen is voluntary and fraudulent as to the rights of the appellant, and that it should be set aside. We are further of the opinion that Mrs. Wright is entitled to the specific performance of the contract.

The decree is reversed and the cause remanded to the circuit court for a proper decree carrying into effect the views herein expressed.

*Reversed and remanded.*