## CIRCUIT COURT OF THE CITY OF NORFOLK

Nettie Browder-Martin

v.

Dolena Meneses etc.

September 15, 2010

Case No. (Civil) CL09-7811

BY JUDGE EVERETT A. MARTIN, JR.

Nettie-Browder Martin has filed a three-count complaint seeking (i) damages of $300,000, (ii) a declaration that a 2009 will is invalid, and (iii) a ruling that the Clerk's probate of that will be "denied." At the conclusion of the trial on July 28, I granted the defendant's motion to strike Counts II and III of the complaint. I found that the evidence was insufficient to establish a lack of testamentary capacity, undue influence, or duress.

Count I remains. In this count the plaintiff seeks damages for breach of a parol contract to make a will. She alleges, and I find from the evidence at trial, that she and her late husband were neighbors of and became friends of Ethel Brown (the "decedent") before 1987. The decedent lived at 814 Mayfield Avenue, and the plaintiff and her husband lived at 790 Mayfield Avenue. The decedent was a frequent visitor at the plaintiff's home, and the plaintiff and her husband frequently took the decedent various places. In 1987, when she was 77 years old and in good health, the decedent asked the plaintiff and her husband to care for her for the duration of her life, and, if they did so, the decedent promised to leave them at her death property she owned at 808 Mayfield Avenue (the "property"). The plaintiff and her husband agreed, and shortly thereafter the decedent executed a will, which provided in Article III:

> I devise unto my dear friends and neighbors, Nettie and Earl Browder, the real property located at 808 Mayfield Avenue, in the City of Norfolk. In making this gift to them, I am assured that for as long as I live they will look after me as they have

in the past. This gift of the real property is, however, subject to this condition: I am survived by my granddaughter, Dolena Marie Meneses, who shall have the right to purchase said real property from Nettie and Earl Browder within two years of the date of my death. The price of the property shall be based upon its reasonable fair market value which, I feel, is ascertainable. I feel that Dolena is capable of deciding within the two-year period whether or not she will desire to purchase the property.

The plaintiff and her husband fulfilled their obligation until his death in 1995. Thereafter the plaintiff continued to do so until her remarriage in 2004. Shortly thereafter she moved from Mayfield Avenue to Chesapeake. She continued to visit the decedent several times a week and paid many of her bills, but she ceased to regularly perform many of the duties she previously performed, such as cooking and driving the decedent to appointments.

After the plaintiff moved from Mayfield Avenue, her son and, later, her daughter-in-law, Robert and Amy Browder (the "Browders"), took over most of the duties the plaintiff had previously performed. Geraldine Roberts, a stranger to the contract, also provided some care to the decedent in February and March of 2008 and was paid. Because of the decedent's age and increasing frailty she moved into the Browders' home in March of 2008 and remained there (save for a brief time in a hospital and a nursing home) until her death in October of 2009. The Browders took full time care of the decedent in this eighteen-month period, providing in an exemplary manner the services one would expect a ninety-eight year old to need. The decedent paid Amy Browder $30 a day, and in April of 2009 the payment increased to $50 to $75 a day.

While in the nursing home in April of 2009, the decedent executed a new will leaving the property to Dolena Meneses.

The defendant denies the existence of the contract under which the plaintiff asserts her claim; however, based upon the plaintiff's testimony, as corroborated by Article III of the 1987 will, I find the contract was made. The defendant also raises two defenses. First, the plaintiff seeks the wrong remedy. Second, the plaintiff breached the contract when she moved to Chesapeake in 2004. The defendant did not plead the statute of frauds or claim the contract was uncertain or indefinite.

## The Remedy

The plaintiff does not seek conveyance of the property, but damages. As proof of her damages she introduced, without objection, the real estate tax assessment of the property, which shows a value of $150,800. (Exh. 4.)

There was no evidence of the value of the services provided. The defendant claims the plaintiff's proper remedy is a constructive trust and that she may not seek damages. In this assertion, she relies on *Story v. Hargrave*, 235 Va. 563, 369 S.E.2d 669 (1988).

In *Story*, an arrangement similar to that here was agreed to, but the testatrix anticipatorily breached it. The promisees sued her asking that a constructive trust be imposed on the property. At trial, the chancellor found the testatrix breached the contract, but he ruled the promisees were entitled to damages for the value of their services rather than specific performance. The Supreme Court reversed and held that, in such cases, the promisee is entitled to the benefit of his bargain, *i.e.*, the land. The Court stated the question presented was "Whether a contract to make a will leaving specific property to the appellants in exchange for personal services, anticipatorily breached by the testatrix, should be enforced in equity." 235 Va. at 565, 369 S.E.2d at 670.

To the same effect is *Wright v. Dudley*, 189 Va. 448, 53 S.E.2d 29 (1949). In both these cases the plaintiff sued for an equitable remedy, *i.e.*, the enforcement of the oral contract. In both cases the circuit court awarded a legal remedy, damages. In both cases the Supreme Court reversed.

Those cases did not hold that a plaintiff, although entitled to an equitable remedy, was barred from seeking damages. It would be odd if they did, as a fundamental rule of equity is that no relief will be granted if there is an adequate remedy at law. If a plaintiff comes to law and there seeks her remedy, is a court of law to gainsay her and tell her the remedy she seeks is inadequate and that she must go to equity? The question answers itself, but authority also answers it.

In *Long v. Colston*, 11 Va. (1 Hen. & M.) 111 (1806), Long contracted to convey an estate in England to Colston for $5000 in cash and land in Kentucky and the Northwest Territory worth $15,000. Long made his conveyance, and Colston paid the cash, but there being some question of the value of the English estate, Colston refused to convey the land. Long brought an action for damages, and Colston filed a bill in chancery to enjoin the prosecution of Long's action. The chancellor granted the injunction, and Long appealed.

The Supreme Court of Appeals voted 3 to 1 to dissolve the injunction. As was the custom of the day, the judges wrote separate opinions. One of the judges in the majority decided the issue on a narrow ground. The other two judges wrote broader opinions, and both held Long had a right to sue at law. Judge Roane wrote:

> I take it therefore to be a well established principle, that, after a breach, a plaintiff may elect to proceed at law for reparation in damages, and that he cannot thereafter be compelled to go for the thing in specie unless he wants it, or unless some

particular grounds of equity exist, on behalf of the party breaking the contract, excusing and relieving against such breach, and showing that, according to the principles of equity, the contract ought, nevertheless, to be performed in specie.

11 Va. at 131. In *Moore's Adm'rs v. Fitz Randolph*, 33 Va. (6 Leigh) 175 (1835), the Court adopted Judge Roane's rationale in holding that a vendee of land under a contract could sue the vendor's administrators at law for a refund of the purchase price rather than be compelled to sue in equity for the land. 33 Va. at 187-88.

*Long* and *Moore's Adm'r* were both cases arising out of written contracts to sell realty, not, as here, an action on a parol contract to make a will. However, the equitable remedy is "equivalent" in each. *Burdine v. Burdine's Ex'or*, 98 Va. 515, 519, 36 S.E. 992, 993 (1898). On the pleadings in this case a legal remedy is available. See *Timberlake's Adm'r v. Pugh*, 158 Va. 397, 163 S.E. 402 (1932); *Wingold v. Bagley*, 164 Va. 431, 180 S.E. 151 (1935); but also see *Ricks v. Sumler*, 179 Va. 571, 19 S.E.2d 889 (1942).

### The Breach

I find the plaintiff partly stopped performing the services promised under the contract when she moved to Chesapeake in 2004. The more difficult question is whether she may recover because the Browders continued to provide the promised services to the decedent.

A contract for personal services is not assignable in Virginia until the services have been performed. *Epperson v. Epperson*, 108 Va. 471, 476, 62 S.E. 344, 346 (1908); *McGuire v. Brown*, 114 Va. 235, 241-42, 76 S.E. 295, 297-98 (1912).

The plaintiff relies on *Rape v. Lyerly*, 287 N.C. 601, 215 S.E.2d 737 (1975), to claim the recipient of personal services may waive the promisee's failure to fulfill the contract when the recipient "permits others, associated with the promisee in [her] lifetime in rendering the performance, to continue after [the promisee's] death and accepts such performance without giving notice within a reasonable time of an intention to consider the obligation as ended." 287 N.C. at 617-18, 215 S.E.2d at 747-48. To the same effect are *Soper v. Galloway*, 129 Iowa 145, 105 N.W. 399 (1905); *Prater v. Prater*, 94 S.C. 267, 77 S.E. 936 (1913). However, in all of these cases, the promisee died, and the successor to the promisee provided the services and brought the suit. Here, the promisee, *i.e.*, the plaintiff is alive. She delegated her responsibilities yet claims the right to sue on the contract. This she may not do.

Nor do I find the defendant is estopped by the decedent's conduct in accepting the Browders' services. The Browders did "occupy a more disadvantageous position than that which they would have occupied except for that conduct." *Atlantic Coast Line RR. v. Bryan*, 109 Va. 523, 526, 65 S.E. 30, 31 (1909). However, the full statement of the law from this case, relied upon by the plaintiff, is:

> In order for there to be an estoppel by conduct, the party sought to be estopped must have caused *the other party* to occupy a more disadvantageous position than that which he would have occupied except for that conduct.

*Id.* (emphasis added). The plaintiff was not put in a more disadvantageous position by the decedent's acceptance of the Browders' services.

In my view of the case, if the plaintiff were to prevail she must prove a novation. She must prove (1) the decedent agreed to release her from her obligation to provide personal services and to accept the substituted services of the Browders, (2) that the Browders fully performed the services, and (3) that the decedent still agreed to convey the property – not to the Browders – but to the plaintiff.

However, the plaintiff did not plead the existence of any contract other than the one entered into in 1987. Thus I need not determine if the evidence would be sufficient to prove a novation, but I do note that the decedent paid Amy Browder about $21,000 from February 2008 until her death, and the word "care" is written in the memo line of many of the checks. This would be evidence indicating the decedent did not consider herself any longer bound by the contract with the plaintiff.

### Final Order

For the reasons stated in the Court's letter opinion of September 15, 2010, it is hereby ordered that the plaintiff take nothing on her complaint and that the defendants recover their costs expended and this matter be dismissed with prejudice and stricken from the docket.